UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No. 23-5126
(C.A. No. 77-2019)

CAROLEE BRADY HARTMAN, et al.,                                   Appellants,

v.

ANTONY J. BLINKEN, Secretary of State, et al.,                    Appellees.

## APPELLEES' MOTION FOR SUMMARY AFFIRMANCE

Appellees, Secretary of State Antony J. Blinken and Amanda Bennett, the Chief Executive Officer of the United States Agency for Global Media, in their official capacities, respectfully move for summary affirmance of the Memorandum Opinion and Order issued by the Honorable Amit P. Mehta on March 31, 2023, which denied Plaintiffs' motion for a lodestar enhancement with respect to previously-paid attorneys' fees. The District Court's decision (attached as Exhibit A) ("Slip Op."), is available at 2023 WL 3366204.

Plaintiffs burdened the District Court, and now seek to burden this Court, with an overreaching attorney fee request in the hope of securing yet another very large fee award before this case at long last is put to rest. The District Court acted well within its discretion in denying that request, and summary disposition of the District Court's decision is appropriate because the merits of this appeal "are so clear that expedited action is justified" and "no benefit will be gained from further

briefing and argument of the issues presented." *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297-98 (D.C. Cir. 1987).

I

A

This class action was initiated in 1977 on behalf of women who unsuccessfully applied for positions at the former United States Information Agency (the "Agency"). Plaintiffs alleged sex discrimination in the Agency's hiring practices. The class as ultimately certified consists of women who applied for certain Foreign Service and Civil Service positions at the Agency between October 8, 1974, and November 16, 1984. *See Hartman v. Wick*, 678 F. Supp. 312 (D.D.C. 1988).

Following extensive proceedings before this Court, the District Court, and a Special Master appointed by the District Court, the parties entered into a Consent Decree on March 21, 2000. R.1083-23.[1] The District Court approved the Consent Decree, and this Court summarily affirmed that decision. This Court subsequently denied rehearing, and the Supreme Court denied certiorari on January 7, 2002, thereby ending the litigation on the merits of Plaintiffs' claims. *See Dillon v.*

---

[1] "R." denotes the corresponding numbered document on the District Court's docket. Page citations refer to the original page number in the cited document, not to page numbers assigned by the electronic case filing system.

*Powell*, No. 00-5356, 2001 WL 410461 (D.C. Cir. Mar. 15, 2001), *cert. denied*, 534 U.S. 1078 (2002).

After signing the Consent Decree, the parties worked together cooperatively to secure its approval and then to carry out its terms, including implementation of the individual relief that had been awarded to certain class members. The implementation process continued until mid-2018, at which time all remedial issues affecting the class members had been resolved. The only issues that remained open involved the attorneys' fees for Plaintiffs' counsel.

B

Many issues about the attorneys' fees owed to Plaintiffs have already been resolved, leaving the current controversy relatively narrowed. Prior to court approval of the Consent Decree, Plaintiffs submitted seven formal petitions for interim attorneys' fees pursuant to Title VII's fee-shifting provision, 42 U.S.C. § 2000e-5(k). Those formal fee petitions, which collectively covered the period from the inception of the case through June 30, 1998, were the subject of litigation before the Special Master and the District Court and were ultimately resolved by stipulation subject to the reservation by each side of all previously-stated objections. R.706, 874; *see Hartman v. Pompeo*, Civ. A. No. 77-2019, 2020 WL 6445873, *2-3 (D.D.C. Nov. 3, 2020).

3

Plaintiffs requested an enhanced fee award in their first interim fee petition. The Special Master recommended that Plaintiffs' request be granted in part, and the District Court adopted that recommendation.  In particular, the Special Master recommended that two of Plaintiffs' attorneys, Mr. Fredrickson and Ms. Brackshaw, "should receive a 25% enhancement on the lodestar rates applicable to them for the years 1980–1990." R.1083-12 at 73.  The Special Master explained why the enhancement should be limited to that 10-year period:

> Fairness requires that the enhancement apply only for the years 1980 – 1990.  In these years, Mr. Fredrickson alone or with Ms. Brackshaw carried the laboring oar in this complex class action and achieved success that is remarkable for two lawyers who had begun their work on the case early in their careers.  Before 1980, Mr. Fredrickson benefitted from supervision by more senior lawyers who also billed for their time.  After 1990, other law firms joined the Plaintiffs for the relief aspect of the case, and it is difficult to say that the efforts of Mr. Fredrickson and Ms. Brackshaw in the post-1990 years are exceptional when compared to the work of the additional counsel who joined them.

*Id.* at 75; *Hartman v. Duffey*, 973 F. Supp. 199, 202 (D.D.C. 1997) (adopting Special Master's recommendation).  Plaintiffs did not seek an enhanced fee award in any of their subsequent interim fee requests, although they reserved the right to do so later.

The Consent Decree provides that "[p]laintiffs shall be entitled to reasonable attorneys' fees, expenses, and costs from the initiation of this case through final distribution of amounts in the settlement fund or the final resolution of any issues

that may arise under this Decree, whichever is later." R.1083-23 ¶ 8. Following the approval of the Consent Decree, the parties settled twenty-one separate interim fee requests, collectively covering the period from July 1, 1998, through December 31, 2018. *Hartman*, 2020 WL 6445873, at *4.

On October 10, 2019, Plaintiffs moved for the final determination of attorneys' fees. In that motion, Plaintiffs argued that their attorneys' fees should be calculated as a percentage of the total settlement under a "constructive common fund" theory. Alternatively, Plaintiffs argued that an enhancement to the lodestar fee was warranted because the lodestar calculated for the interim fee payments did not reflect class counsel's true market value and did not adequately compensate class counsel for delay in receiving payment. *Id.* at *1.

The District Court denied without prejudice Plaintiffs' motion. The District Court rejected Plaintiffs' constructive common fund approach and ruled that the Consent Decree establishes a fee-shifting arrangement that requires the use of the lodestar methodology to calculate Plaintiffs' final fee award. *Id.* at *5-9. The District Court also ruled that Plaintiffs' "total interim fee award, or interim lodestar, falls short of a 'reasonable' fee for two reasons, and a possible third: (1) below-market USAO *Laffey* Matrix rates were used to calculate interim fee awards for over 20 years, (2) there has been a delay in receiving whatever amount is appropriate to compensate [Plaintiffs' counsel] for the shortfall caused by those

reduced rates, and (3) the interest thus far received on interim fee awards arguably has been inadequate to compensate for delay." *Id.* at *17.

Although finding that an adjustment to the interim lodestar was necessary, the District Court concluded that Plaintiffs failed to propose "a method that is reasonable, objective, and capable of being reviewed on appeal" to calculate the appropriate adjustment. The District Court therefore gave Plaintiffs another chance to carry their burden of "identifying a factor that the lodestar does not adequately take into account and proving with specificity that an enhanced fee is justified." *Id.* at *19.

Following the District Court's 2020 decision, the parties entered stipulations pursuant to which the government paid more than $9 million to class counsel to resolve any claim for fees or costs based on a contention (1) that Plaintiffs' receipt of fees was unreasonably delayed, (2) that the lodestar fees Plaintiffs were paid do not reflect counsel's true market value, and (3) that the interest paid on the interim fee awards was insufficient. Slip Op. at *2; *see* R.1107, 1112, 1113. These stipulations fully resolved the issues that caused the District Court to conclude in 2020 that Plaintiffs' interim lodestar fell short of a reasonable fee award.

In each of the stipulations entered after the Court's 2020 decision, Plaintiffs reserved the right to seek a lodestar enhancement for superior attorney performance and exceptional results. On May 5, 2022, Plaintiffs filed their motion

6

seeking such an enhancement on such bases. Plaintiffs sought enhancement of the $19 million "base lodestar" to which the parties had stipulated. *See* R.1112. That sum did not include the fees attributable to class counsel's non-litigation activities during the post-Consent Decree period, and the fees that were previously enhanced (the 1980-1990 time for Mr. Fredrickson and Ms. Brackshaw) were also excluded. R.1119-1 [Pl. Mem. re Lodestar Enhancement] at 4 n.4; *see* Slip Op. at *2.

The fee enhancements previously awarded to Plaintiffs' counsel were not at issue in the proceedings that are the subject of this appeal. Defendants waived any objection to those prior enhancements, and Plaintiffs did not contend that the prior enhancements were inadequate or should otherwise be augmented. The claimed "superior lawyering" for which Plaintiffs sought the lodestar enhancement now at issue involves class counsel's activities during the post-1990 litigation, after Mr. Fredrickson and Ms. Brackshaw were joined by others as counsel for Plaintiffs.

II

The lodestar fee is computed by multiplying (1) the number of hours reasonably expended on the litigation by (2) a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "[T]here is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor

that may properly be considered in determining a reasonable fee." *Perdue*, 559 U.S. at 554.

The Supreme Court has expressly authorized an upward adjustment to the lodestar fee in three circumstances: (1) where the lodestar fee does not adequately measure counsel's "true market value," (2) where counsel makes an "extraordinary outlay of expenses and the litigation is exceptionally protracted," or (3) where there is "exceptional delay in the payment of fees." *Id.* at 554-56. Plaintiffs relied on the first and third of those exemplars in support of their initial motion for a final fee determination. The parties' subsequent stipulations, however, resolved any claim based on those factors. Consequently, in their motion for lodestar enhancement, Plaintiffs could not, and did not, rely on any of the specific circumstances under which the Supreme Court has expressly authorized a lodestar enhancement. *See* Slip Op. at *4.

### III

Plaintiffs' instant request for a lodestar enhancement is based on the *Hartman* Consent Decree, not on Title VII's fee-shifting provision. Because the fee-shifting arrangement at issue here is contractual, precedents involving fee-shifting statutes are not directly controlling. Plaintiffs, however, agree "that the principles of federal fee-shifting may guide the Court's exercise of discretion," and "the 'six rules' articulated in *Perdue* [*v. Kenny A. ex rel. Winn*, 559 U.S. 542

(2010)], accurately reflect the current federal fee-shifting law concerning lodestar enhancements." R.1121 [Pl. Reply re Lodestar Enhancement] at 5. In addition, Plaintiffs concede that "the Supreme Court jurisprudence on lodestar enhancements is helpful in assessing whether it is appropriate here." R.1119-1 [Pl. Mem. re Lodestar Enhancement] at 8 n.15. Therefore, the District Court's reliance on *Perdue* and other precedents involving federal fee-shifting statutes is not in dispute. *See* Slip Op. at *3 n.6.

IV

Plaintiffs asked the District Court to "award additional fees in a range from 1.0 to 4.5 times the stipulated $19 million lodestar." R 1119-1 [Pl. Mem. re Lodestar Enhancement] at 44.[2] Based on Plaintiffs' explanation of their proposed multiplier methodology, this request equates to an additional fee award somewhere between $0 and $66.5 million. *See id.* at 8 n.14 ("a multiplier of 1.5 when applied to the stipulated lodestar of $19 million would mean additional fees of $9.5 million and a multiplier of 2 would yield an additional $19 million").

---

[2] Defendants' opposition noted that Plaintiffs may have intended to request a multiplier in the range from 2.0 to 4.5. *See* R.1120 [Def. Opp. re Lodestar Enhancement] at 9 n.5; *see also* Slip Op. at *6 (Plaintiffs seek a multiplier "in the range from [2.0] to 4.5;" emendation by District Court). Plaintiffs did not clarify their request in their reply. Because most of the cases Plaintiffs proffered as exemplars awarded multipliers below 2.0, *see* R.1121-5, Defendants now presume that Plaintiffs' requested range is accurately stated in their opening brief (i.e., from 1.0 to 4.5).

9

Plaintiffs left the choice of the multiplier, and the justification for that choice, to the District Court. "To assist the Court in assigning a multiplier" Plaintiffs proffered a chart "noting relevant factors pertinent to each of the cases where an enhancement has been awarded." R.1121 [Pl. Reply re Lodestar Enhancement] at 24. Plaintiffs' chart lists 13 mainly out-of-Circuit, pre-*Perdue* cases in which multipliers ranging from 1.12 to 4.45 were used to enhance the lodestar fee. *See* R.1121-5 [Pl. Case Chart].

The District Court expressed skepticism that Plaintiffs' proposed case-comparison approach is compatible with *Perdue*. The District Court explained that selecting a multiplier in the range Plaintiffs proposed "would be a largely subjective exercise" that would "produce the kind of 'essentially arbitrary' results that the [Supreme] Court said must be abandoned in favor of 'an objective and reviewable' basis to justify a lodestar enhancement." Slip Op. at *6. That skepticism is well-founded. *See Perdue*, 559 U.S. at 557 ("Why, for example did the [district] court grant a 75% enhancement instead of the 100% increase that respondents sought? And why 75% rather than 50% or 25% or 10%?").

Plaintiffs do not dispute that "[t]he District Court enjoys substantial discretion in making reasonable fee determinations." R.1121 [Pl. Reply re Lodestar Enhancement] at 3. The District Court acted well within its discretion in rejecting Plaintiffs' proposed case-comparison methodology. Indeed, it would

have been an abuse of discretion for the District Court to do otherwise.  Plaintiffs'
proposal is not only inconsistent with *Perdue*, but also amounts to an abdication of
Plaintiffs' burden of proof.

The fifth and sixth *Perdue* rules provide that (5) "the burden of proving that
an enhancement is necessary must be borne by the fee applicant" and (6) "a fee
applicant seeking an enhancement must produce specific evidence that supports the
award" so that the enhancement's calculation is "objective and capable of being
reviewed on appeal."  *Perdue*, 559 U.S. at 553; *accord, e.g., Murray v.
Weinberger*, 741 F.2d 1423, 1428 (D.C. Cir. 1984) (a fee applicant bears a "heavy
burden . . . to justify any increase in the lodestar figure," and "this burden is
satisfied *only* if the applicant makes a *specific claim* for an upward adjustment
based on a particular factor" and provides "specific support for any premium
which the applicant requests" (emphases in original)).

Thus, although the District Court has ultimate responsibility for determining
a fee award, as a predicate to any enhancement of the lodestar Plaintiffs were
obliged to present a specific proposal that was objective and capable of being
reviewed on appeal.  *See Purdue*, 559 U.S. at 553.  Instead of making a specific
proposal, however, Plaintiffs made a very unspecific request and sought to pass
their burden on to him.  *See* R.1121 [Pl. Reply re Lodestar Enhancement] at 24
("the Court must select [a multiplier] that is 'objective and reviewable'").

11

Plaintiffs may not dodge their burden so easily.  *See Murray*, 741 F.2d at 1429

("[i]f these strict requirements are satisfied by both the fee applicant and the

district court, an upward adjustment of the lodestar figure may be proper").

Plaintiffs not only failed to satisfy their burden, they defaulted on it entirely.

Summary affirmance is warranted for this reason alone.

V

Plaintiffs acknowledge that "the decision to award a multiplier is firmly

vested in the [District] Court's discretion."  R.1119-1 [Pl. Mem. re Lodestar

Enhancement] at 42.  Plaintiffs also acknowledge that "[t]he District Court has

broad discretion to decide reasonable attorneys' fees," and that "[d]istrict court

judges are accustomed to making reasonableness determinations in a wide variety

of contexts, and their assessments in such matters, in the event of appeal, ordinarily

qualify to highly respectful review."  R.1087 [Pl. Reply re Final Fee

Determination] at 22; *see General Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997)

("[D]eference . . . is the hallmark of abuse-of-discretion review.").  Indeed,

plaintiffs told the District Court:

> In a sense, this Court is Justice Kennedy's "detached observer,"
> removed in time by two decades from the superior lawyering that is
> the subject of this motion, and able to see the specific evidence in the
> record objectively.  This Court is in a perfect position to decide the
> enhancement question before it.

R.1119-1 at 43; *see Perdue*, 559 U.S. at 560 (Kennedy, J., concurring) ("When immersed in a case, lawyers and judges find within it a fascination, an intricacy, an importance that transcends what the detached observer sees.").

The District Court did exactly what the Plaintiffs asked it to do. It reviewed the voluminous record objectively, determined that class counsel had received reasonable attorneys' fees, and decided that no further enhancement was due. The District Court's decision is firmly grounded in fact and law and is comfortably within the District Court's broad discretion to determine reasonable attorneys' fees.

A

Plaintiffs emphasized the high degree of success class counsel achieved. *Perdue*, however, confirmed that "the quality of an attorney's performance" and the "results obtained" should be treated "as one," explaining that "superior results are relevant only to the extent that they are the result of superior attorney performance," and so a court need only consider whether a fee enhancement is justified due to superior performance. *Perdue*, 559 U.S. at 544; *accord, e.g., Thompson v. Kennickell*, 836 F.2d 616, 622 & n.5 (D.C. Cir. 1988) ("results obtained" is considered "only under the rubric of 'quality of representation'").

While an exceptional result is a necessary condition for a lodestar enhancement, the result alone is not sufficient. Indeed, Plaintiffs acknowledged below that "exceptional success" is a "threshold requirement." R.1119-1 [Pl.

Mem. re Lodestar Enhancement] at 12; *accord Save Our Cumberland Mountains v. Hodel*, 826 F.2d 43, 52 (D.C. Cir. 1987) ("the Supreme Court requires more than a finding that counsel attained an 'exceptional' result"), *modified on other grounds*, 857 F.2d 1516 (D.C. Cir. 1988) (en banc).  To justify an enhancement, the fee applicant must identify some additional factor that is not subsumed within the lodestar and that provides an objective, reviewable basis for the requested enhancement.  Subjective and impressionistic factors do not qualify because they are "essentially arbitrary."  *See Purdue*, 559 U.S. at 557-58.

Plaintiffs relied on certain features of the case and various policy reasons to supply the additional factor needed to justify a lodestar enhancement.  The District Court concluded that Plaintiffs' proposed enhancement factors were all unavailing because they either were subsumed by the lodestar calculation or did not provide an objective and reviewable basis for a lodestar enhancement.  This conclusion is in harmony with *Perdue*, consistent with the record, and, as an exercise of the District Court's broad discretion, merits deference from this Court.

B

Plaintiffs repeatedly cited laudatory statements about class counsel by the District Court and the Special Master.  Similar, if not even more laudatory statements by the trial court in *Perdue*, however, were disregarded because a reviewing court cannot assess the accuracy of such statements.  *See Purdue*, 559

U.S. at 569 (Breyer, J., dissenting). Awarding an enhancement on such impressionistic grounds does not provide an "objective and reviewable basis for fees." *Id.* at 558.

Moreover, Plaintiffs quoted the Special Master out of context. The statements on which Plaintiffs relied appear in the Special Master's reports on Plaintiffs' third and fourth interim fee petitions. In those petitions, Plaintiffs sought compensation for thousands of hours that class counsel devoted to document review in connection with Plaintiffs' so-called "Defense Buster" project. Defendant objected to the fee request, arguing that much of the time expended by class counsel for document review was duplicative and excessive. The statements on which Plaintiffs relied were taken from the Special Master's explanation for his recommendation to reject defendant's argument and compensate class counsel for virtually all the hours they billed. *See* R.1121-1 [Special Master's Report re 4th Fee Petition] at 27-39, 56; R.1121-3 [Special Master's Report re 3rd Fee Petition] at 26-27.

The factors identified by the Special Master in his reports on the third and fourth interim fee petitions were explicitly taken into account in determining the number of hours that were reasonably expended on the litigation, and so are accounted for in the lodestar. *See* Slip Op. at *5 ("the complexity and voluminous nature of the record materials will be reflected in the overall number of hours

billed"). Relying on those factors again to support a lodestar enhancement would be double counting in violation of the fourth *Perdue* rule. *See Perdue* 559 U.S. at 553 ("an enhancement may not be based on a factor that is subsumed in the lodestar calculation").

*Perdue* rule 4—the "no double counting rule"—prohibits awarding an enhancement for any factor that is used in determining the number of hours reasonably expended on the litigation or the reasonable hourly rate at which that time is compensated. Thus, the "novelty and complexity" of a case and "brilliant insights and critical maneuvers" by senior attorneys are not valid enhancement factors because the former is reflected in the number of hours billed and the latter is accounted for by the attorneys' billing rates. *See Perdue*, 559 U.S. at 553 & 555 n.5. Work that is "difficult, wearing, and time consuming" is similarly accounted for by the lodestar fee. *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 730 (1987) (plurality op.).

Plaintiffs claimed that a lodestar enhancement was warranted because of the hardships class counsel faced and certain strategic decisions they made. The examples that Plaintiffs proffered as evidence of class counsel's "superior lawyering" all involve class counsel's activities during the post-1990 litigation, after Plaintiffs had scaled up their legal team to correspond to the complexity and demands of the litigation at that time. During that phase of the case, Plaintiffs'

legal team included more than "120 individuals in seven firms." R.1081 [Pl. Mem. re Final Fee Determination] at 6. Plaintiffs' legal team included a large and profitable law firm, specialist litigators, and senior attorneys experienced in managing complex civil cases. After 1990, Plaintiffs' counsel could therefore divide responsibility for the litigation and assign work to personnel well-suited for each task. *See* R.1121-1 [Special Master's Report re 4th Fee Petition] at 10, 12-13; R.1121-3 [Special Master's Report re 3rd Fee Petition] at 9-11.

The litigation activities on which Plaintiffs relied in seeking a lodestar enhancement involve the same kind of work (e.g., reviewing documents, plotting strategy, writing briefs, cross-examining witnesses, managing deadlines and competing priorities) that lawyers typically do in complex civil litigation, which is notoriously contentious, demanding, and intense. *See* R.1121-1 [Special Master's Report re 4th Fee Petition] at 12 n.5 (noting that "[d]efendant's counsel have borne similar burdens"); *see also Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 969 (D.C. Cir. 2004) (producing high-quality legal papers in a relatively short period of time or on a short deadline is something lawyers do on a regular basis). Such work is subsumed in the lodestar, either through additional hours expended on the litigation or the lawyers' hourly rates. Characterizing such work as somehow rare and exceptional is inherently a subjective and impressionistic assessment, so such characterizations do not provide an objective and reviewable

basis for a lodestar enhancement.  *See* Slip Op. at *5 ("monumental resistance" and "severe time limitations" are not valid enhancement factors).

Plaintiffs' legal team expended over 100,000 hours on the litigation.  *See* R.1119-1 [Pl. Mem. re Lodestar Enhancement] at 6.  As a result of the parties' stipulations, Plaintiffs cannot now dispute that class counsel have been paid full market value for that time plus appropriate interest to compensate for delay.  *See* Slip Op. at *4.  Class counsel have therefore received the "reasonable attorneys' fees" permitted by the Consent Decree.[3]

C

Plaintiffs also urged the District Court to award multiplied fees for policy reasons including *Hartman*'s social significance, its "undesirability," preclusion of work that Mr. Fredrickson and his firm otherwise could have done, and the need to encourage capable attorneys to pursue meritorious civil rights cases.  Slip Op. at *4.  None of those policy reasons may properly be considered because none of them provides an objective and reviewable basis for a lodestar enhancement.

---

[3]    Plaintiffs also requested an enhancement due to work for which class counsel did not bill in an exercise of billing judgment.  *See Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980) (en banc) (recognizing counsel's obligation to exercise billing judgment).  Time not directly billed to Defendants under the billing judgment rule, and so not included in the lodestar, may not be indirectly billed to Defendants as a lodestar enhancement.  *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 566-67 (1986) (time excluded from the lodestar does not support the conclusion "that the remaining hours represented work of 'superior quality'").

Notwithstanding the immense social significance of the case, the Supreme Court overturned the enhancement that was awarded in *Perdue*.  *See* 559 U.S. at 564-66 (Breyer, J., dissenting).  Plaintiffs here provided no objective and reviewable basis on which to differentiate *Hartman*'s social significance from *Perdue*'s, or to calculate an appropriate multiplier for whatever social significance *Hartman* might have.  "Social significance," therefore, is too impressionistic and subjective to be an enhancement factor.  *See* Slip Op. at *6.

Plaintiffs contended that *Hartman* should be treated as an "undesirable" case, and thereby qualify for multiplied fees, because the case was considered "unwinnable" after the initial loss on the merits in 1978.  *But see Pryor v. District of Columbia*, Civ. A. No. 18-0920, 2018 WL 4782322, *9 (D.D.C. Sept. 18, 2018) (explaining "undesirability" as used by *Johnson* factors).  The lodestar fees Plaintiffs now seek to enhance, however, were incurred after the District Court reinstated the liability finding, and by that time "the case was no longer deemed so unwinnable as to prevent attracting competent counsel."  Slip Op. at *6.  Thus, even if an enhancement under Plaintiffs' definition of "undesirability" were permissible and could be calculated in some objective and reviewable way, the facts presented here do not support such an enhancement.

Plaintiffs likewise proffered no specific evidence to show that *Hartman* had a materially adverse impact on Mr. Fredrickson or his firm, or an objective and

reviewable method to compensate for whatever work Mr. Fredrickson had to decline because of his firm's responsibilities in *Hartman*.  In this connection, it is noteworthy that *Hartman* provided steady, fee-generating work for Mr. Fredrickson and his firm for almost 40 years, and the favorable publicity from the *Hartman* settlement elevated Mr. Fredrickson's stature and reputation, thereby helping him attract additional business.  *See* R 1119-1 [Pl. Mem. re Lodestar Enhancement] at 40-42 & nn.33-36.  Nothing in the record indicates that any of the opportunities foregone because of *Hartman* would have been as lucrative or as professionally beneficial for Mr. Fredrickson as *Hartman* has been.

Plaintiffs' argument that fee enhancements are necessary to incentivize civil rights litigation similarly defies objective and reviewable quantification and lacks legal and factual support.  This argument implies that enhanced fee awards should be the norm in civil rights cases, thereby contravening the "strong" presumption that the lodestar fee is adequate to attract competent counsel for such cases.  *See Perdue*, 559 U.S. at 552.  Plaintiffs proffered no specific evidence to overcome this presumption, and their argument is belied by the fact that Plaintiffs "were able to engage a large law firm and a firm that specializes in damages models without promise that they would receive an enhancement."  Slip Op. at *7.

VI

Some of the enhancement factors Plaintiffs proposed are included among the so-called *Johnson* factors. R.1121-5 [Pl. Case Chart listing *Johnson* factors]; *see Perdue*, 559 U.S. at 550-51 & n.4. This Court, however, has indicated that the *Johnson* factors are not appropriately used as enhancements to the lodestar. *King v. Palmer*, 950 F.2d 771, 784 n.8 (D.C. Cir. 1991) (en banc). Furthermore, the *Johnson* factors "gave very little actual guidance to district courts. Setting attorney's fees by reference to a series of sometimes subjective factors placed unlimited discretion in trial judges and produced disparate results." *Perdue*, 559 U.S. at 551; *accord Copeland*, 641 F.2d at 890 (*Johnson* factors "overlap considerably," are "conflicting and at least partially redundant," and, "without more, cannot guarantee a rational setting of fees" because *Johnson* "offers no guidance on the relative importance of each factor, whether they are to be applied differently in different contexts or, indeed, how they are to be applied at all."). Plaintiffs' invocation of the *Johnson* factors, therefore, does nothing to help satisfy Plaintiffs' burden to produce "specific evidence" to support a fee enhancement that is "objective and capable of being reviewed on appeal." *Perdue*, 559 U.S. at 553; *see Copeland*, 641 F.2d at 890 ("Simply to articulate those twelve [*Johnson*] factors, however, does not itself conjure up a reasonable dollar figure in the mind

of a district court judge.  A formula is necessary to translate the relevant factors into terms of dollars and cents.").

VII

"A request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437.  Plaintiffs' instant request already has passed that point: this fee dispute is approaching its fourth anniversary, the pertinent record materials consume thousands of pages, and the District Court has issued two formal opinions on the merits.

There is no need for the protracted proceedings in the District Court to be followed by protracted appellate review.  Plaintiffs encouraged the District Court to adopt a highly subjective and impressionistic "I-know-it-when-I-see-it" approach to lodestar enhancement.  *See* R.1121 [Pl. Reply re Lodestar Enhancement] at 24 (quoting *Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964)).  Plaintiffs' approach is clearly at odds with *Perdue*, and its adoption by the District Court would have been reversible error.  Plaintiffs, therefore, cannot satisfy their "heavy burden" to show that the District Court abused its discretion in rejecting their unsound approach and denying a further enhancement of class counsel's lodestar fees.  *See Mt. Solutions, Ltd. v. FCC*, 197 F.3d 512, 522 (D.C. Cir. 1999).

The District Court's decision should be summarily affirmed.

MATTHEW M. GRAVES<br>United States Attorney

JANE M. LYONS
Assistant United States Attorney

*/s/ Peter C. Pfaffenroth*
PETER C. PFAFFENROTH
Assistant United States Attorney
Civil Division
601 D Street, N.W.
Washington, D.C. 20001
(202) 252-2513
peter.pfaffenroth@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 14th of July 2023, I caused a true and correct copy of the foregoing document to be served upon counsel for Plaintiffs-Appellants via this Court's electronic filing system.

*/s/ Peter C. Pfaffenroth*
PETER C. PFAFFENROTH
Assistant United States Attorney

## CERTIFICATE OF COMPLIANCE

The text for this document is prepared using 14-point Times New Roman typeface. The text consists of 4,979 words, as calculated by Microsoft Word.

*/s/ Peter C. Pfaffenroth*
PETER C. PFAFFENROTH
Assistant United States Attorney
