# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

CAROLEE BRADY HARTMAN, et al.

Appellants,

v.

ANTONY J. BLINKEN,
United States Secretary of State, et al.,

Appellees.

On Appeal from the United States
District Court for the District of Columbia

## FINAL BRIEF FOR THE APPELLEES

MATTHEW M. GRAVES
United States Attorney

JANE M. LYONS
Assistant United States Attorney

PETER C. PFAFFENROTH
Assistant United States Attorney
601 D Street NW
Washington, D.C. 20530
(202) 252-2513

C.A. No. 77-2019        *Counsel for Appellees*

# CERTIFICATE AS TO
# PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), undersigned counsel for the appellees certifies as follows:

## Parties and Amici

Appellants, plaintiffs below, are a class of women who unsuccessfully applied for Foreign Service or Civil Service positions at the United States Information Agency ("USIA") during the period from October 8, 1974, to November 16, 1984. Plaintiffs' claims concerned sex discrimination in USIA's hiring practices in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. Following the class-wide liability finding, approximately 9,400 women sought relief with respect to certain entry-level USIA Foreign Service positions, and approximately 1,100 women sought relief with respect to mid-level USIA Foreign Service positions and USIA Civil Service positions. Because there was some overlap between the two groups of claimants, the total number of class members is somewhat less than the sum total of the two groups.

The lead named plaintiff, Carolee Brady Hartman, filed her employment discrimination complaint on November 25, 1977. Lube

Medina, Rose Kobylinski, and Josephina Martinez intervened as named plaintiffs on September 11, 1978, and plaintiff Toura Kem's discrimination case was consolidated with this action by the district court on November 22, 1978. Class members Pushpa Agnihotri, Judith Ambrose, Nancy Coffee, Myra Converse, Sonya R. Davis, Patricia DeYoung, Claire Frankel, Lynn Goldman, Jahanara Hasan, Lisa M. Heilbronn, Sheila M. Hoban, Ruthann Irish, Elsa Rael, Honora Rankin-Galloway, Michal Shekel, Yolanda Marshall Tisdale, Carolyn Turner, Shirley Hill Will, Pamela E. Woodard, and Donna L. Woolf were permitted to intervene by the district court on November 23, 1994.

On September 26, 2000, the district court permitted Zuzanna Dillon, Perviz Chokhani, and Elin-Kai Toona Gottschalk, to intervene for the limited purpose of appealing from the district court's decision denying them an opportunity to file claim forms out of time and participate in the settlement embodied in a Consent Decree that resolved the class members' claims and ended the litigation on the merits. Joyce Whiten, another woman who unsuccessfully sought leave to join the class by submitting an untimely claim form, also appealed from the orders issued

by the district court denying her request to file a claim form and participate in the settlement.

USIA was abolished effective October 1, 1999, pursuant to the Foreign Affairs Reform and Restructuring Act of 1998, Pub. L. No. 105-277, §§ 1301 et seq., 112 Stat. 2681-761. Certain agency functions were transferred to the Department of State and others were placed under the control of a new independent agency, the Broadcasting Board of Governors, later renamed the United States Agency for Global Media. Consequently, the appellees, defendants below, are the Secretary of State and the Chief Executive Officer of the United States Agency for Global Media in their respective official capacities only. Antony J. Blinken is currently the Secretary of State. Amanda Bennett is currently the Chief Executive Officer of the United States Agency for Global Media.

There were no amici curiae in the district court proceedings that are the subject of this appeal, and there are currently no amici curiae in this appeal.

## Ruling Under Review

Plaintiffs appeal from the Memorandum Opinion and Order issued by the Honorable Amit P. Mehta on March 31, 2023, which denied plaintiffs' motion for a lodestar enhancement with respect to previously-paid attorneys' fees. The opinion ("2023 Mem. Op.") is available at 2023 WL 3366204 and JA_____.

## Related Cases

This case was most recently before this Court in Nos. 00-5356 and 00-5368, in which the Court summarily affirmed the district court's approval of the *Hartman* Consent Decree and rejected claims by the four above-identified women who sought to join the class and participate in the settlement by filing untimely claim forms. *See Dillon v. Powell*, 2001 WL 41046 (D.C. Cir.), *cert. denied*, 534 U.S. 1078 (2002).

This case was also previously before this Court in Nos. 79-2545 to 79-2547; Nos. 81-1909 to 81-1911 [published as *DeMedina v. Reinhardt*, 686 F.2d 997 (D.C. Cir. 1982)]; Nos. 92-5325 & 92-5347 [published as *Hartman v. Duffey*, 19 F.3d 1459 (D.C. Cir. 1994)]; No. 95-5030 [published as *Hartman v. Duffey*, 88 F.3d 1232 (D.C. Cir. 1996), *cert. denied*, 520 U.S. 1240 (1997)]; and Nos. 98-5540 to 98-5548, 98-5577, 99-

5167 to 99-5179, 99-5374, 99-5379, and 99-5406. The appeals in Nos. 98-5540 to 98-5548, 98-5577, 99-5167 to 99-5179, 99-5374, 99-5379, and 99-5406 were voluntarily dismissed.

Undersigned counsel is not currently aware of any pending related cases.

/s/ Peter C. Pfaffenroth
PETER C. PFAFFENROTH
Assistant United States Attorney

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION ............................................................ 1

STATEMENT OF THE ISSUES .............................................................. 1

PERTINENT STATUTES AND RULES ................................................. 2

STATEMENT OF THE CASE ................................................................. 2

SUMMARY OF THE ARGUMENT ..................................................... 14

STANDARD OF REVIEW.................................................................... 18

ARGUMENT ......................................................................................... 18

    I.    The District Court Properly Followed The *Perdue* Rules To Guide The District Court's Resolution Of Plaintiffs' Motion For A Lodestar Enhancement.......... 18

        A.    The *Hartman* Consent Decree Is Governed By Federal Common Law......................................... 18

        B.    The Federal Common Law Rules Set Forth In *Perdue* Are Fully Applicable To Plaintiffs' Request For A Lodestar Enhancement. ...................... 22

    II.    Plaintiffs Are Foreclosed From Seeking A Lodestar Enhancement Under The Specific Exemplars Described in *Perdue*............................................................ 29

    III.    The District Court Did Not Interpret The Parties' Stipulations To Prevent Plaintiffs From Seeking A Lodestar Enhancement. .................................... 37

IV.   Plaintiffs Failed To Carry Their Burden Of Proof
To Justify A Lodestar Enhancement. .................................. 40

    A.   Plaintiffs Failed To Present Specific
Evidence Of A Factor Not Subsumed By The
Lodestar That Provides An Objective And
Reviewable Basis For An Enhancement. ................... 40

    B.   Plaintiffs Failed To Proffer A Reasonable,
Objective, And Reviewable Methodology To
Compute A Lodestar Enhancement............................ 53

CONCLUSION ....................................................................... 58

# TABLE OF AUTHORITIES

Authorities upon which we chiefly rely are marked with asterisks.

## Federal Cases

*ASARCO, LLC,*
   751 F.3d 291 (5th Cir. 2014) ............................................................. 28

*Blum v. Stenson,*
   465 U.S. 886 (1984) ........................................................................... 24

*Boyle v. United Technologies Corp.,*
   487 U.S. 500 (1988) ........................................................................... 21

* *Burlington v. Dague,*
   505 U.S. 557 (1992) ............................................................... 23, 24, 43

*Conservation Force v. Salazar,*
   699 F.3d 538 (D.C. Cir. 2012) .......................................................... 18

* *Copeland v. Marshall,*
   641 F.2d 880 (D.C. Cir. 1980) ..................................................... 41, 45

*Covington v. District of Columbia,*
   57 F.3d 1101 (D.C. Cir. 1995) .......................................................... 18

*Dillon v. Powell,*
   No. 00-5356, 2001 WL 410461 (D.C. Cir. 2001) ................................ 3

* *District of Columbia v. Air Florida, Inc.,*
   750 F.2d 1077 (D.C. Cir. 1984) ........................................ 20, 21, 27, 37

*DL v. District of Columbia,*
   924 F.3d 585 (D.C. Cir. 2019) .......................................................... 35

*Donnell v. United States,*
   682 F.2d 240 (D.C. Cir. 1982) .......................................................... 52

*E.O.H.C. v. Dep't of Homeland Sec.,*
   950 F.3d 177 (3rd Cir. 2020) ............................................................ 21

*Gelis v. BMW of North America, LLC,*
   49 F.4th 371 (3rd Cir. 2022) ............................................................ 25

*Gen. Elec. Co. v. Joiner,*
   522 U.S. 136 (1997) ........................................................................... 52

*Gisbrecht v. Barnhart,*
   535 U.S. 789 (2002) ..................................................................... 22, 52

*Guam v. United States,*
   950 F.3d 104 (D.C. Cir. 2020) .......................................................... 21

\* *Hartman v. Blinken*,
No. 77-2019, 2023 WL 3366204 (D.D.C. Mar. 31, 2023) ........................
......9, 11, 12, 13, 19, 27, 34, 38, 39, 40, 41, 43, 46, 47, 48, 50, 53, 54, 56

*Hartman v. Duffey*,
973 F. Supp. 199 (D.D.C. 1997)............................................................6

\* *Hartman v. Pompeo*,
No. 77-2019, 2020 WL 6445873 (D.D.C. Nov. 3, 2020)...........................
.................................................4, 7, 8, 19, 31, 32, 35, 36, 48, 49

*Hartman v. Wick*,
678 F. Supp. 312 (D.D.C. 1988)............................................................3

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ...........................................................................24

\* *In re Home Depot, Inc.*,
931 F.3d 1065 (11th Cir. 2019) ....................................................24, 25

*In re Market Ctr. E. Retail Prop., Inc.*,
730 F.3d 1239 (10th Cir. 2013) ..........................................................28

*In re Pilgrim's Pride Corp.*,
690 F.3d 650 (5th Cir. 2012) .........................................................28, 45

*In re Volkswagen & Audi Warranty Extension Litig.*,
692 F.3d 4 (1st Cir. 2012).....................................................................21

*Jacobellis v. Ohio*,
378 U.S. 184 (1964) ...........................................................................53

\* *Kassman v. Am. Univ.*,
546 F.2d 1029 (D.C. Cir. 1976).......................................20, 21, 27, 37

*Keepseagle v. Perdue*,
856 F.3d 1039 (D.C. Cir. 2017).............................................................39

*King v. Palmer*,
950 F.2d 771 (D.C. Cir. 1991)..............................................................44

*Kingman Park Civic Ass'n v. Williams*,
348 F.3d 1033 (D.C. Cir. 2003)............................................................34

*Laffey v. Nw. Airlines, Inc.*,
740 F.2d 1071 (D.C. Cir. 1984)............................................................20

\* *Linneman v. Vita-Mix Corp.*,
970 F.3d 621 (6th Cir. 2020) ....................................................25, 26, 29

\* *Murray v. Weinberger*,
741 F.2d 1423 (D.C. Cir. 1984)........................................24, 29, 55, 56

\* *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
478 U.S. 546 (1986) ...............................................24, 43, 49

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
483 U.S. 711 (1987) ......................................................24, 47

\* *Perdue v. Kenny A.*,
559 U.S. 542 (2010) ................................ 1, 13, 22, 23, 25, 29,
..........30, 31, 32, 34, 35, 41, 42, 43, 44, 45, 47, 48, 50, 51, 54, 55, 56, 57

*Price v. District of Columbia*,
792 F.3d 112 (D.C. Cir. 2015)...........................................18

*Richardson v. Edwards*,
127 F.3d 97 (D.C. Cir. 1997)..............................................18

*Role Models Am., Inc. v. Brownlee*,
353 F.3d 962 (D.C. Cir. 2004).............................................46

*Salazar v. District of Columbia*,
809 F.3d 58 (D.C. Cir. 2015)..............................................18

\* *Save Our Cumberland Mountains v. Hodel*,
826 F.2d 43 (D.C. Cir. 1987)..........................................24, 41

*Solutions, Ltd. v. FCC*,
197 F.3d 512 (D.C. Cir. 1999)........................................53, 54

\* *Thompson v. Kennickell*,
836 F.2d 616 (D.C. Cir. 1988)........................................24, 41

*United States v. Dean*,
96 F.3d 1477 (D.C. Cir. 1996)............................................20

*United States v. Trudeau*,
812 F.3d 578 (7th Cir. 2016) ............................................37

*United States v. Volvo Powertrain Corp.*,
758 F.3d 330 (D.C. Cir. 2014).............................................23

## Federal Statutes

11 U.S.C. § 330(a)........................................................26
28 U.S.C. § 1291 ...........................................................1
28 U.S.C. § 1331 ...........................................................1
42 U.S.C. § 2000e-5(f)(3) ..................................................1
42 U.S.C. § 2000e-5(k).....................................................4
42 U.S.C. §§ 2000e.........................................................2

# GLOSSARY

"2020 Mem. Op." is the Memorandum Opinion and Order issued by the District Court in this case on November 3, 2020, and is available at 2020 WL 6445873. "*" references the WL pagination.

"2023 Mem. Op." is the Memorandum Opinion and Order issued by the District Court in this case on March 31, 2023, and is available at 2023 WL 3366204. "*" references the WL pagination.

"JA" is the Joint Appendix.

"R." denotes the corresponding numbered document in the District Court's PACER docket for this case. Page citations to those documents refer to the original page numbering in the cited document, not to the page numbers assigned by the District Court's ECF system.

"USIA" is the United States Information Agency, the original defendant in this case and the agency whose actions gave rise to the plaintiffs' employment discrimination claims. USIA was abolished while this case was pending; its functions were transferred to the agencies that are the current defendants: the Department of State and the United States Agency for Global Media.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3). Plaintiffs timely appealed the District Court's order denying plaintiffs' motion for a lodestar enhancement. *See* Fed. R. App. P. 4(a)(1)(B). This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

In appellees'/defendants' view, this appeal presents the following issues:

1. Whether plaintiffs failed to present to the District Court, and thus forfeited, arguments [i] that local District of Columbia law controls the disposition of this case, [ii] that a lodestar enhancement is warranted because the base lodestar was calculated using LSI matrix rates, and [iii] that federal bankruptcy practice is relevant to this attorneys' fees dispute in civil rights litigation.

2. Whether it was proper for the District Court to look to the federal common law rules set forth in *Perdue v. Kenny A.*, 559 U.S. 542 (2010), to resolve plaintiffs' motion for a lodestar enhancement.

3. Whether the District Court interpreted the parties' joint stipulations to foreclose plaintiffs' reliance only on two specific exemplars described in *Perdue*, and so preserved plaintiffs' ability

to seek a lodestar enhancement based on other potential enhancement factors.

4. Whether the District Court acted within its discretion to determine reasonable attorneys' fees in concluding that plaintiffs did not carry their burden of proof to establish the existence of a relevant factor not subsumed by the lodestar that provides a reasonable, objective, and reviewable basis for a lodestar enhancement.

## PERTINENT STATUTES AND RULES

Pursuant to Fed. R. Civ. P. 23(h), "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." This rule "does not undertake to create new grounds for an award of attorney fees." Advisory Committee Notes accompanying 2003 adoption of Rule 23(h).

## STATEMENT OF THE CASE

This class action was initiated in 1977 on behalf of women who unsuccessfully applied for positions at the former United States Information Agency ("USIA"). Plaintiffs' claims concerned sex discrimination in USIA's hiring practices in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. The class

as ultimately certified consists of women who applied for certain Foreign Service and Civil Service positions at USIA during the period between October 8, 1974, and November 16, 1984. *See Hartman v. Wick*, 678 F. Supp. 312 (D.D.C. 1988).

Following extensive proceedings before this Court, the District Court, and a Special Master appointed by the District Court, the parties entered into a Consent Decree on March 21, 2000. R.1083-23 [JA959]. *See generally* R.1085-1 [Def. Corrected Opp. re Final Fee Determination] at 2-15 (summary of proceedings in this case prior to the current attorneys' fees dispute) [JA994-1007]. The *Hartman* Consent Decree was approved by the District Court on July 12, 2000, and that decision was summarily affirmed by this Court on March 15, 2001. This Court denied rehearing of the latter decision on June 14, 2001, and the Supreme Court denied certiorari on January 7, 2002, which ended the litigation on the merits of plaintiffs' claims. *See Dillon v. Powell*, No. 00-5356, 2001 WL 410461 (D.C. Cir.), *cert. denied*, 534 U.S. 1078 (2002).

After signing the Consent Decree, the parties worked together cooperatively to secure approval of the Consent Decree, and then to carry out the Consent Decree's terms, including the implementation of the

individual relief that had been awarded to certain class members. *See* R.1083-8 [Van Horn Decl.] at 8-9, ¶¶ 13-15 [JA784-85]; R.1083-9 [Parish Decl.] at 2-6, ¶¶ 4-15 [JA788-92] (describing non-litigation work following Consent Decree). The implementation process continued until mid-2018, at which time all remedial issues affecting the class members had been resolved. The only issues that remained open involved the attorneys' fees for plaintiffs' counsel.

Prior to court approval of the Consent Decree, plaintiffs submitted seven formal petitions for interim attorneys' fees pursuant to Title VII's fee-shifting provision, 42 U.S.C. § 2000e-5(k). Those formal fee petitions, which collectively covered the period from the inception of the case through June 30, 1998, were the subject of litigation before the Special Master and the District Court and ultimately were resolved by stipulation subject to the reservation by each side of all previously-stated objections. R.706, R.874; *see Hartman v. Pompeo*, No. 77-2019, 2020 WL 6445873 (hereinafter "2020 Mem. Op."), *2 - 4 (D.D.C.) [JA1151-54].

Plaintiffs requested an enhanced fee award in their first interim fee petition. The Special Master recommended that plaintiffs' request be granted in part, and the District Court adopted that recommendation. In

particular, the Special Master recommended that two of plaintiffs' attorneys, Mr. Fredrickson and Ms. Brackshaw, "should receive a 25% enhancement on the lodestar rates applicable to them for the years 1980-1990." R.1083-12 [Special Master's Report re 1st Fee Petition] at 73 [JA866]. The Special Master explained why the enhancement should be limited to that 10-year period as follows:

> Fairness requires that the enhancement apply only for the years 1980 – 1990. In these years, Mr. Fredrickson alone or with Ms. Brackshaw carried the laboring oar in this complex class action and achieved success that is remarkable for two lawyers who had begun their work on the case early in their careers. Before 1980, Mr. Fredrickson benefitted from supervision by more senior lawyers who also billed for their time. After 1990, other law firms joined the Plaintiffs for the relief aspect of the case, and it is difficult to say that the efforts of Mr. Fredrickson and Ms. Brackshaw in the post-1990 years are exceptional when compared to the work of the additional counsel who joined them.

*Id.* at 75 [JA868]; *see also* R.1083-15 [Special Master's January 17, 1995 Report] at 41 (reaffirming enhancement) [JA949]. The District Court approved the Special Master's recommendation in its opinion resolving Plaintiffs' motion for final resolution of the first and second interim fee

petitions. *Hartman v. Duffey*, 973 F. Supp. 199, 202 (D.D.C. 1997).[1]

Plaintiffs did not seek an enhanced fee award in any of their subsequent

interim fee requests, although they reserved the right to do so later.

Paragraph 8 of the *Hartman* Consent Decree provides:

> Plaintiffs shall be entitled to reasonable attorneys' fees, expenses, and costs from the initiation of this case through the final distribution of amounts in the settlement fund or the final resolution of any issues that may arise under this Decree, whichever is later. Reasonable attorneys' fees, expenses, and costs shall include reasonable fees and expenses associated with administering the settlement, including but not limited to notifying the Class Members of this Decree, establishing and maintaining a qualified settlement fund, distributing the fund to the Class Members, complying with legal obligations governing such matters, and retaining appropriate third parties to perform such tasks. The parties shall endeavor to reach agreement on all of Plaintiffs' claims for attorneys' fees, expenses, and costs, but each party reserves the right to litigate any claims that cannot be resolved informally.

---

[1] Plaintiffs incorrectly attribute this opinion to Judge Richey, who had passed away several months earlier. *See* Brief of Appellants at 27. Judge Robertson issued the opinion. *See* 973 F. Supp. at 200. Plaintiffs also assert that the then-deceased Judge Richey "deferred any consideration of further enhancements to the conclusion of the case." Brief of Appellants at 33 n.21. In fact, no such deferral was ever ordered, either by Judge Richey or by Judge Robertson. Plaintiffs appear to be confusing Judge Richey's January 24, 1995 Order, which deferred full consideration of plaintiffs' first interim fee petition. *See* R. 1083-16 [JA956]. That Order was superseded by Judge Robertson's opinion cited above.

R.1083-23 at 6-7, ¶ 8 [JA965-66]. Following the approval of the Consent Decree, the parties settled twenty-one separate interim fee requests, collectively covering the period from July 1, 1998, through December 31, 2018. *See* 2020 Mem. Op. at *4 [JA1155].

On October 10, 2019, plaintiffs moved for final determination of attorneys' fees. Plaintiffs argued that their attorneys' fees should be calculated as a percentage of the total settlement under a "constructive common fund" theory. Alternatively, they argued that an enhancement of the lodestar fee was warranted because the interim payments did not reflect class counsel's true market value and did not adequately compensate them for delay in receiving payment. *Id.* at *1 [JA1148].

On November 3, 2020, the District Court denied without prejudice plaintiffs' motion for final determination of attorneys' fees. The District Court rejected plaintiffs' constructive common fund approach and held that the Consent Decree establishes a fee-shifting arrangement that requires use of the lodestar method to calculate plaintiffs' final fee award. *Id.* at *1, *9 [JA1148, 66]. The District Court further ruled that plaintiffs' "total interim fee award, or interim lodestar, falls short of a 'reasonable' fee for two reasons, and a possible third." In particular, the District Court

found: (1) that "below market USAO *Laffey* Matrix rates were used to calculate interim fee awards for over 20 years," (2) that "there has been a delay in receiving whatever amount is appropriate to compensate [plaintiffs] for the shortfall" caused by those below-market rates, and (3) that "the interest thus far received on interim fee awards arguably has been inadequate to compensate for delay." *Id.* at *17 [JA1183].

Although finding that the interim lodestar fell short of a "reasonable" fee award, the District Court concluded that plaintiffs had failed to propose a method that is "reasonable, objective, and capable of being reviewed on appeal" to calculate the appropriate adjustment. Accordingly, the District Court sent plaintiffs "back to the drawing board" so that they could have another chance to carry their burden to "identify[] a factor that the lodestar does not adequately take into account and proving with specificity that an enhanced fee is justified." *Id.* at *19 (internal quotation marks omitted) [JA1188]. In this connection, the District Court encouraged the parties to try to reach agreement on the "true lodestar" which would incorporate the adjustments needed to make up the shortfalls that the District Court identified in the interim payments plaintiffs previously had received. *Id.* at *17, *19 [JA1183,

JA1188-89]; *see Hartman v. Blinken*, No. 77-2019, 2023 WL 3366204 (D.D.C.) (hereinafter "2023 Mem. Op.") at *1 [JA1586-87].

Following the District Court's 2020 decision, the parties entered three formal joint stipulations. The stipulations were entered to settle certain unresolved issues and to streamline the next round of litigation in which the remaining issues would be resolved.

- On September 30, 2021, the parties stipulated that defendants would pay plaintiffs $9,033,600 to resolve the issues that impelled the District Court to send plaintiffs "back to the drawing board to present a revised fee petition that (1) adjusted the USAO *Laffey* Matrix rates used to calculate interim fee awards for over 20 years, and that included an amount to compensate for the delay in receiving the shortfall caused by use of those rates; and (2) to arrive at the difference between the interest thus far received on interim fee awards computed at the 1-year Treasury bill rates and the prime rate." R.1107 [JA1209].

- In a stipulation entered on March 16, 2022, defendants agreed to pay plaintiffs' fee counsel $400,000 to settle plaintiffs' claims for attorneys' fees and costs for the period from November 1, 2017,

through October 7, 2021. The parties further stipulated that "through this stipulation and the [September 30, 2021] stipulation . . . they have completely and finally resolved any claim for fees or costs based on a contention (1) that Plaintiffs' receipt of fees was unreasonably delayed, (2) that the lodestar fees Plaintiffs have been paid did not reflect counsel's true market value, and (3) that the interest paid on interim fee awards in this litigation was insufficient." R.1113 [JA1215].

• In a separate stipulation also entered on March 16, 2022, the parties stipulated that the "base lodestar" for potential enhancement is $19 million. The "base lodestar" is the post-1990 merits litigation portion of the total lodestar fee to which the parties agreed plaintiffs would limit their enhancement request for "exceptional success as a result of superior lawyering." The express purpose of this stipulation was to "enable the parties and the Court to avoid the need to contest or adjudicate specific hours or hourly rates" as a part of plaintiffs' anticipated motion for an enhancement of the base lodestar. R.1112 [JA1213].

Each of those three stipulations was subsequently approved by the Court and entered separately as a Court Order. R.1108 [JA1211]; R.1116 [JA1219]; R.1117 [JA1221].

The parties' joint stipulations fully resolved the issues that caused the District Court to conclude in 2020 that interim payments plaintiffs previously received fell short of a reasonable lodestar fee, and so dispelled the District Court's concern that the "true lodestar" had not been determined. *See* 2023 Mem. Op. at *1 [JA1587]. Including the payments made pursuant to the stipulations, the total amount that the government has paid to plaintiffs' counsel on account of this litigation to date exceeds $35.9 million. *Id.* at *3 [JA1590]; *see* R.1085-1 [Def. Corrected Opp. re Final Fee Determination] at 10-15 (tabulating amounts paid to plaintiffs' counsel by the government through calendar year 2018) [JA1002-07].

The joint stipulations were entered without prejudice to either party's position as to whether a lodestar enhancement is warranted for superior attorney performance and exceptional results. Plaintiffs filed their motion seeking such an enhancement on May 5, 2022.

Per the March 16, 2022 stipulation, ECF 1112 [JA1213], only part (i.e., the "base lodestar") of the total lodestar is eligible for enhancement.

In particular, (1) class counsel's non-litigation activities during the post-Consent Decree period and (2) "[t]he fees that were previously enhanced (the 1980-1990 time for Mr. Fredrickson and Ms. Brackshaw)" are excluded from the base lodestar. R.1119-1 [Pl. Mem. re Lodestar Enhancement] at 4 n.4 [JA1233]; *see* 2023 Mem. Op. at *2 [JA1589].

Therefore, the fee enhancements that were previously awarded to Mr. Fredrickson and Ms. Brackshaw were not at issue in the proceedings below that are the subject of this appeal. Defendants did not contest those prior enhancements, and plaintiffs did not contend that the prior enhancements were inadequate or should otherwise be augmented. Accordingly, those prior enhancements are now final, and are no longer subject to review, reconsideration, or appeal.

The claimed "superior lawyering" for which plaintiffs sought the lodestar enhancement in their May 5, 2022 motion involves class counsel's activities during the post-1990 litigation, after additional counsel joined Mr. Fredrickson and Ms. Brackshaw as counsel for plaintiffs. During that phase of the case, in marked contrast to the situation during the 1980-1990 time period, plaintiffs were represented by a "team of over 120 individuals in seven firms." R.1081 [Pl. Mem. re

Final Fee Determination] at 6 [JA482]. This legal team included "a large law firm [Crowell & Moring] and a firm that specializes in damages models [Heller Huron]." 2023 Mem. Op. at *7 [JA1598].

Plaintiffs' lodestar enhancement motion was based on Paragraph 8 of the *Hartman* Consent Decree, not on Title VII's fee-shifting provision. Plaintiffs requested a multiplied fee award, with a multiplier chosen by the District Court to be applied to the stipulated $19 million base lodestar. 2023 Mem. Op. at *1 [JA1587]. Plaintiffs urged the District Court to look to other cases where multipliers had been used to select a multiplier by which to enhance the base lodestar. *Id.* at *6 [JA1596].

The District Court denied plaintiffs' motion for a lodestar enhancement on March 31, 2023. The District Court, guided by the Supreme Court's principles articulated in *Perdue v. Kenny A.*, 559 U.S. 542 (2010), found that plaintiffs' proposed enhancement factors were either already subsumed by the lodestar or did not provide an objective and reviewable basis for an enhancement. The District Court also rejected plaintiffs' proposed case-comparison approach, finding that such a methodology would be "essentially arbitrary" and thereby incompatible with the standards set forth in *Perdue*. This appeal followed.

## SUMMARY OF THE ARGUMENT

Appellants/plaintiffs have forfeited, waived, or conceded many of the issues they seek to raise in this appeal. The Court should decline to entertain those issues. Plaintiffs' arguments on the remaining issues that were properly preserved for appellate review have no merit. The District Court made no error of law. The District Court reasonably employed applicable legal principles in denying plaintiff's motion for a lodestar enhancement. The District Court's decision was well within the District Court's broad discretion to determine reasonable attorneys' fees.

Plaintiffs failed to present to the District Court, and thereby forfeited, any argument (1) that District of Columbia local law controls the disposition of this case, (2) that a lodestar enhancement is warranted because the base lodestar was calculated using LSI matrix rates, and (3) that federal bankruptcy practice is relevant to this attorneys' fees dispute. None of those arguments has been properly preserved for review by this Court. In fact, plaintiffs' current argument about the LSI matrix rates is a reversal of the position plaintiffs espoused

below. Before the rate issue became moot because of the parties' joint stipulations, plaintiffs had advocated in favor of the LSI matrix rates.

In any event, the forfeited arguments all lack merit. First, consent decrees such as the *Hartman* Consent Decree, which resolve claims under federal law and to which the United States or a federal agency is a party, are governed by federal common law, not by state or local law. Second, the lodestar fee and the base lodestar were determined by a negotiated agreement of the parties, not by using LSI matrix rates or any other formula for hourly rates. Third, attorneys' fees awards in bankruptcy cases involve considerations unique to such cases and are not analogous to fee-shifting in civil rights cases like *Perdue* and *Hartman.*

Although the fee-shifting arrangement at issue here arises from the *Hartman* Consent Decree, not from a statute, the six federal common law rules set forth in *Perdue* are fully applicable to plaintiffs' lodestar enhancement request because the policy reasons underlying those rules apply with the same force in this contractual fee-shifting case as they do in statutory fee-shifting cases. Moreover, plaintiffs agreed that the *Perdue* rules are applicable in this case. Plaintiffs explicitly told the District Court that "the Supreme Court jurisprudence on lodestar

enhancements is helpful in assessing whether it is appropriate here," "that the principles of federal fee-shifting may guide the Court's exercise of discretion," and "that the 'six rules' articulated in *Perdue* accurately reflect the current federal fee-shifting law concerning lodestar enhancements." *See infra* at 27.

Plaintiffs' argument that the District Court interpreted the parties' joint stipulations to preclude any possibility of an enhancement misdescribes the record. The District Court properly interpreted the stipulations to prevent plaintiffs from basing their lodestar enhancement request on two specific exemplars described in *Perdue*. The District Court did not hold that those exemplars are the only circumstances under which an enhancement could be awarded, and so preserved plaintiffs' ability to seek enhancement based on other potential factors.

Furthermore, plaintiffs did not rely on the *Perdue* exemplars in their motion for a lodestar enhancement, and so did not preserve any argument for appeal based on those exemplars. Plaintiffs instead identified various other reasons to justify an enhancement. The District Court considered the reasons advanced by plaintiffs on the merits, and properly concluded that no enhancement should be awarded because

plaintiffs failed to present specific evidence of a relevant factor not subsumed by the lodestar that provides an objective and reviewable basis for an enhancement. This conclusion is faithful to *Perdue* and, as an exercise of the District Court's broad discretion to determine reasonable attorneys' fees, merits deference from this Court.

Plaintiffs did not request an enhancement in a specific amount. Instead, plaintiffs asked the District Court to "award additional fees in a range from 1.0 to 4.5 times the stipulated $19 million lodestar," *see infra* at 53, which equates to a range between $0 and $66.5 million. Plaintiffs left the choice of the multiplier, and the justification for that choice, to the District Court. This proposal was an invitation for the District Court to adopt an impressionistic and subjective approach to lodestar enhancement, and so was appropriately rejected by the District Court as incompatible with *Perdue*'s standards. Indeed, it would have been an abuse of discretion for the District Court to do otherwise because plaintiffs' proposal amounts to an abdication of plaintiffs' burden to put forward a reasonable, objective, and reviewable methodology with which to calculate the requested enhancement. Plaintiffs' failure even to attempt to carry the methodological aspect of their burden of proof is an

independent, and by itself sufficient, reason to affirm the District Court's decision denying plaintiffs' motion for a lodestar enhancement.

## STANDARD OF REVIEW

This Court reviews attorneys' fees awards for abuse of discretion. *Covington v. District of Columbia*, 57 F.3d 1101, 1110 (D.C. Cir. 1995). The Court does, however, review *de novo* whether the District Court applied the correct legal standard. *Salazar v. District of Columbia*, 809 F.3d 58, 63 (D.C. Cir. 2015); *see Price v. District of Columbia*, 792 F.3d 112, 114 (D.C. Cir. 2015); *Conservation Force v. Salazar*, 699 F.3d 538, 542 (D.C. Cir. 2012).

## ARGUMENT

I. **The District Court Properly Followed The *Perdue* Rules To Guide The District Court's Resolution Of Plaintiffs' Motion For A Lodestar Enhancement.**

A. **The *Hartman* Consent Decree Is Governed By Federal Common Law.**

The relevant fee-shifting arrangement for plaintiffs' lodestar enhancement motion is established by the *Hartman* Consent Decree, and so is a contractual arrangement, not a statutory one. *See Richardson v. Edwards*, 127 F.3d 97, 101 (D.C. Cir. 1997) ("a consent decree is a form of contract"). Thus, as the District Court recognized, *Perdue* and similar

precedents involving federal fee-shifting statutes are not binding here. 2023 Mem. Op. at *3 n.6 [JA1590]; 2020 Mem. Op. at *8 n.8 [JA1163].

Plaintiffs contend that "[i]n following the strict letter of *Perdue* outside of the federal fee-shifting context, the District Court erred as a matter of law." Brief of Appellants at 42-43. Plaintiffs assert that "when fees are shifted pursuant to contract, the substantive law of the forum applies." *Id.* at 34-35. Thus, in plaintiffs' view, "District of Columbia law, not federal case law arising under fee-shifting statutes, controls the disposition of this case." *Id.* at 35.

Plaintiffs' argument that the District Court should have adjudicated their motion under District of Columbia local law fails for two reasons. First, plaintiffs never presented this argument to the District Court. Indeed, plaintiffs did not cite a single local District of Columbia case in their District Court briefs. *See* R.1081 [Pl. Mem. re Final Fee Determination] at ii-v (Table of Authorities) [JA472-75]; R.1087 [Pl. Reply re Final Fee Determination] at ii-iv (Table of Authorities) [JA1040-42]; R.1119-1 [Pl. Mem. re Lodestar Enhancement] at ii-v (Table of Authorities) [JA1301-04]; R 1121 [Pl. Reply re Lodestar Enhancement] at ii-iii (Table of Authorities) [JA1437-38].

"It is well settled that issues and legal theories not asserted at the District Court level ordinarily will not be heard on appeal." *District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1084 (D.C. Cir. 1984). Thus, a party forfeits a claim by failing to raise it below when the party "knew, or should have known," that the claim could be raised. *Laffey v. Nw. Airlines, Inc.*, 740 F.2d 1071, 1091 (D.C. Cir. 1984).

Despite ample opportunity to do so, plaintiffs never indicated to the District Court that District of Columbia local law is at all relevant to their request for a final fee determination or to their request for a lodestar enhancement. Plaintiffs have therefore forfeited their legal theory that District of Columbia local law is controlling here. *See Kassman v. Am. Univ.*, 546 F.2d 1029, 1032 (D.C. Cir. 1976) ("Litigative theories not pursued in the trial court ordinarily will not be entertained in an appellate tribunal. And 'questions not properly raised and preserved during the proceedings under examination . . . will normally be spurned on appeal.'"); *see also United States v. Dean*, 96 F.3d 1477, 1482 (D.C. Cir. 1996) (subject matter jurisdiction is the only nonforfeitable argument).

Second, plaintiffs' claim that District of Columbia local law is controlling is clearly incorrect. Thus, although forfeiture principles may

yield to a preeminent interest of justice, *Air Florida*, 750 F.2d at 1085; *Kassman*, 546 F.2d at 1032, no such consideration exists here.

The sole authority on which plaintiffs base their new choice-of-law argument is *In re Volkswagen & Audi Warranty Extension Litig.*, 692 F.3d 4 (1st Cir. 2012), where state law was used to interpret a settlement agreement. Because *Volkswagen* was a diversity suit and the settlement agreement involved only state law claims, the First Circuit did not address whether federal law governs the construction of settlement agreements, such as the *Hartman* Consent Decree, that dispose of federal claims. *Id.* at 15 n.13. *Volkswagen*, therefore, plainly is inapposite.

Moreover, the federal government was not a party to the settlement agreement in *Volkswagen*, a critical distinction from the situation here. The Supreme Court has "held that obligations to and rights of the United States under its contracts are governed exclusively by federal law." *Boyle v. United Technologies Corp.*, 487 U.S. 500, 504 (1988) (citing authorities). "Thus, disputes about the meaning of consent decrees to which the United States or a federal agency is a party are governed by federal common law." *E.O.H.C. v. Dep't of Homeland Sec.*, 950 F.3d 177, 192-93 (3rd Cir. 2020) (citing authorities); *accord Guam v. United States*,

950 F.3d 104, 114-15 (D.C. Cir. 2020) ("where, as here, [a] consent decree binds the United States, that contract is 'governed exclusively by federal law'"; quoting *Boyle*), *rev'd on other grounds*, 593 U.S. 310 (2021).

Plaintiffs' reliance on *Volkswagen* and District of Columbia local law is misplaced. The determination of "reasonable attorneys' fees" under the *Hartman* Consent Decree is governed by federal common law, and the District Court properly looked to that law to resolve plaintiffs' motion for a lodestar enhancement.

## B. The Federal Common Law Rules Set Forth In *Perdue* Are Fully Applicable To Plaintiffs' Request For A Lodestar Enhancement.

The obvious and logical source of federal common law for purposes of attorneys' fees issues arising under the *Hartman* Consent Decree is the lodestar methodology described in *Perdue*. This methodology was developed for use under federal fee-shifting statutes, such as Title VII of the Civil Rights Act of 1964, that permit prevailing plaintiffs to recover "reasonable" attorneys' fees from the government. The lodestar methodology has "achieved dominance in the federal courts" and is the "guiding light" of the Supreme Court's fee-shifting jurisprudence. *Perdue*, 559 U.S. at 551 (quoting *Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002),

and *Burlington v. Dague*, 505 U.S. 557, 562 (1992)). This methodology was used by the parties, the Special Master, and the District Court to calculate the interim fee awards in this case.

In *Perdue*, the Supreme Court set forth "six important rules" based on its prior decisions concerning federal fee-shifting statutes. Those rules are: (1) a reasonable fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case; (2) there is a strong presumption that the lodestar method yields a fee sufficient to achieve this objective; (3) enhancements may be awarded only in "rare and exceptional circumstances"; (4) the lodestar includes most, if not all, of the relevant factors constituting a reasonable attorney's fee, and an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation; (5) the burden of proving that an enhancement is necessary to yield a reasonable fee is borne by the fee applicant; and (6) a fee applicant seeking an enhancement must produce specific evidence that supports the award.[2] *Perdue*, 559 U.S. at

---

[2] Because the settlement agreement embodied in the *Hartman* Consent Decree has been entered as an Order of the District Court, the enforcement and administration of that Order is governed by D.C. Circuit law. *See United States v. Volvo Powertrain Corp.*, 758 F.3d 330, 336 (D.C.

(footnote continued on next page)

552-53 (citing *Dague*, 505 U.S. at 557; *Pennsylvania v. Del. Valley Citizens' Council for Clean Air* ("*Delaware Valley II*"), 483 U.S. 711 (1987) (plurality op.); *Pennsylvania v. Del. Valley Citizens' Council for Clean Air* ("*Delaware Valley I*"), 478 U.S. 546 (1986); *Blum v. Stenson*, 465 U.S. 886 (1984); and *Hensley v. Eckerhart*, 461 U.S. 424 (1983)).

Although the six *Perdue* rules are not technically binding in this contractual fee-shifting case, "just because precedent is not technically binding does not mean [the Court] should blithely disregard it. To promote consistency in the law, [the Court] should adhere to precedent where its reasoning applies." *In re Home Depot, Inc.*, 931 F.3d 1065, 1085 (11th Cir. 2019). "Thus, while the statutory cases are not binding on contractual arrangements, we will not lightly cast aside the statutory fee-shifting precedent if its reasoning applies with full force." *Id.*

The policy reasons underlying the *Perdue* rules are equally applicable in the contractual fee-shifting context. For example, *Perdue* rule 4 – the "no double counting rule" – encompasses many of the

_____

Cir. 2014). The six *Perdue* rules are consistent with long established D.C. Circuit precedents. *See Thompson v. Kennickell*, 836 F.2d 616, 622–23 (D.C. Cir. 1988); *Save Our Cumberland Mountains v. Hodel*, 826 F.2d 43, 52–53 (D.C. Cir. 1987), *modified*, 857 F.2d 1516 (D.C. Cir. 1988) (en banc); *Murray v. Weinberger*, 741 F.2d 1423, 1428-29 (D.C. Cir. 1984).

Supreme Court's reasons for limiting the use of multipliers in statutory fee-shifting cases. Because most of the factors courts formerly used to justify enhancements are already subsumed by the lodestar, it is unreasonable, and would result in a windfall, to count them again with a multiplier. This reasoning "makes it just as unreasonable to double-count in a contractual fee-shifting case as it is in a statutory fee-shifting case." *Home Depot*, 931 F.3d at 1085.

Similarly, the "strong presumption" that the lodestar calculation yields a "reasonable" fee, established by the first and second *Perdue* rules, does not "disappear[ ] just because fees are shifted pursuant to contract rather than a statute." *Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 632 (6th Cir. 2020). And the fifth and sixth *Perdue* rules, which place the burden of proof on the fee applicant to show that a fee award "is objective and capable of being reviewed on appeal," *Perdue*, 559 U.S. at 553, apply with equal force in both contractual and statutory fee-shifting cases. *See Gelis v. BMW of North America, LLC*, 49 F.4th 371, 381 (3rd Cir. 2022); *see also Perdue*, 559 U.S. at 558 (without adequate appellate review "widely disparate awards may be made, and awards may be influenced

(or at least, may appear to be influenced) by a judge's subjective opinion regarding particular attorneys or the importance of the case").

Therefore, the fact that the fee-shifting arrangement here arises from the *Hartman* Consent Decree rather than from a statute is "a distinction without a difference." *See Linneman*, 970 F.3d at 632.

Plaintiffs note that some courts have declined to extend the *Perdue* framework to 11 U.S.C. § 330(a), an attorneys' fees provision in the Federal Bankruptcy Code that enumerates factors to consider when determining a reasonable fee, and so differs from the more typical fee-shifting statutes under which the Supreme Court's lodestar methodology is used. Plaintiffs contend that the District Court should have followed the approach taken in bankruptcy cases. Brief of Appellants at 40-42. Plaintiffs, however, forfeited this argument because they did not contest the use of the Supreme Court's lodestar methodology in District Court.

In their memorandum in support of a lodestar enhancement, plaintiffs told the District Court that "the Supreme Court jurisprudence on lodestar enhancements is helpful in assessing whether it is appropriate here." R.1119-1 [Pl. Mem. re Lodestar Enhancement] at 8 n.15 [JA1313]. Plaintiffs did not mention the bankruptcy cases on which

they now rely, and their reference to "Supreme Court jurisprudence" can only mean *Perdue* and its predecessor Supreme Court cases. Plaintiffs made that point explicit in their reply brief, in which they told the District Court that "[b]oth sides agree that the principles of federal fee-shifting may guide the Court's exercise of discretion," and "[b]oth sides agree that the 'six rules' articulated in *Perdue* accurately reflect the current federal fee-shifting law concerning lodestar enhancements." R.1121 [Pl. Reply re Lodestar Enhancement] at 5 [JA1445]; *see also* R.1081 [Pl. Mem. re Final Fee Determination] at 3 n.3, 35-44 [JA479, JA511-20] (asserting that this case "meets the criteria for enhancement of lodestar fees as articulated by the Supreme Court in *Perdue v. Kenny A*," and arguing for lodestar enhancement based on those criteria).

The District Court's statement that "the parties have agreed that caselaw regarding awards under fee-shifting statutes is applicable here," 2023 Mem. Op. at *3 n.6 [JA1590], accurately describes the parties' positions below. Consequently, plaintiffs' newly-minted argument based on practice in bankruptcy court should not be considered in this appeal. *See Air Florida,* 750 F.2d at 1084-85; *Kassman*, 546 F.2d at 1032.

Plaintiffs' tardy attempt to import bankruptcy practice into this case also is unavailing because attorneys' fees awards in bankruptcy cases involve considerations unique to such cases and are not analogous to fee-shifting in civil rights cases. Indeed, courts that declined to extend *Perdue* to bankruptcy cases have relied on the "distinctions between the award of attorney's fees in the civil rights context and the award of attorney's fees under § 330 in the bankruptcy context." *In re Market Ctr. E. Retail Prop., Inc.*, 730 F.3d 1239, 1247 (10th Cir. 2013).

Among other things, Section 330 of the Bankruptcy Code is not a fee-shifting statute, and under that section the payment of fees does not depend on whether one party has prevailed over the other. *Id.* at 1248. Also, *Perdue's* concern with avoiding unconstrained, subjective decision-making in awarding fees does not apply in bankruptcy proceedings where

> enhancements . . . are only paid in the parallel universe where everyone is a winner (e.g. because everyone received 100 cents on the dollar). In these rare cases, the professionals may potentially receive an enhancement only after transforming a carcass into a cheetah, so to speak, thereby enlarging the pie that is shared by all of the debtor's creditors. In this parallel universe, there is no settling or losing party to protect from the discretion of the bankruptcy courts.

*In re Pilgrim's Pride Corp.*, 690 F.3d 650, 666 (5th Cir. 2012); *accord ASARCO, LLC*, 751 F.3d 291, 296 (5th Cir. 2014) ("*Pilgrim's Pride* is

controlling in bankruptcy fee matters, at least where a reorganization plan pays creditors' claims in full.").

By contrast, unconstrained discretion to award fees in a manner that does not provide a sufficient basis for meaningful appellate review is a significant concern in the fee-shifting context of civil rights cases like *Perdue* and *Hartman. See Perdue*, 559 U.S. at 558 ("[i]t is essential that the judge provide a reasonably specific explanation for all aspects of a fee determination, including any award of an enhancement"); *accord Murray v. Weinberger*, 741 F.2d 1423, 1429 (D.C. Cir. 1984) (district court must "clearly explain the reasons for any upward adjustment" of the lodestar).

Thus, whatever their merit in bankruptcy law's "parallel universe," the bankruptcy cases that decline to follow *Perdue* provide no support for overturning the District Court's reliance on *Perdue* in this case. *See Linneman*, 970 F.3d at 632.

## II. Plaintiffs Are Foreclosed From Seeking A Lodestar Enhancement Under The Specific Exemplars Described in *Perdue*.

Plaintiffs argue that they are entitled to a lodestar enhancement because the lodestar fee and the stipulated $19 million base lodestar were determined by a formula "based only on the seniority of the lawyers

involved." Brief of Appellants at 20-21. In this connection, plaintiffs assert that "[t]he stipulated lodestar to be used in the consideration of an enhancement was based on the LSI matrix rates calculated pursuant to the Court's November 2020 order." *Id.* at 17. Plaintiffs contend this use of the LSI matrix's seniority-based single-factor rates satisfies "*Perdue*'s 'single factor rates' exception," and so makes an enhancement appropriate. *Id.* at 28. Plaintiffs' argument misunderstands *Perdue* and misdescribes the record in this case.

*Perdue* recognizes that "an enhancement may be appropriate where the method used in determining the hourly rate employed in the lodestar calculation does not adequately measure the attorney's true market value, as demonstrated in part during the litigation." *Perdue* 559 U.S. at 554-55 (footnote omitted). The Supreme Court added that such a variance from true market value "*may* occur if the hourly rate is determined by a formula that takes into account only a single factor (such as years since admission to the bar) or perhaps only a few similar factors." *Id.* at 555 (emphasis added). In such event, the court should "adjust the attorney's hourly rate in accordance with specific proof linking the attorney's ability to a prevailing market rate." *Id.*

Thus, contrary to plaintiffs' claim, Brief of Appellants at 28, *Perdue* does not recognize a "single factor rates exception" for all cases where hourly billing rates are determined by reference to a seniority-based fee matrix. And the use of such a fee matrix does not, as plaintiffs seem to believe, *see* Brief of Appellants at 29, 31, 47, permit enhancements based on success or other factors except for the prevailing market rate. Rather, where the use of a fee matrix does fail to measure an attorney's true market value, the remedy is to adjust the attorney's hourly rate so that it reflects a prevailing market rate, which the fee applicant must demonstrate with "specific proof." *Perdue,* 559 U.S. at 555.

Plaintiffs' claim that class counsel's lodestar fee and the stipulated $19 million base lodestar were calculated using hourly rates from the LSI matrix is likewise incorrect. The District Court expressly rejected the seniority-based rates used to calculate the interim lodestar for the period covered by plaintiffs' eighth through twenty-eighth interim fee petitions (covering the years 1998-2018).[3] 2020 Mem. Op. at *16 [JA1180-81]. After

---

[3]     Starting with plaintiffs' third interim fee petition, plaintiffs' interim fee awards were computed using the "USAO *Laffey* Matrix," a seniority-based fee matrix prepared by the United States Attorney's Office for the District of Columbia. The District Court determined that

(footnote continued on next page)

that ruling, the parties settled the lodestar fee award and compensation for delay issues. The September 30, 2021 joint stipulation recites that

> the [District] Court sent plaintiffs back to the drawing board to present a revised fee petition that (1) adjusted the USAO *Laffey* Matrix rates used to calculate interim fee awards for over 20 years, and that included an amount to compensate for the delay in receiving the shortfall caused by those rates; and (2) to arrive at the difference between the interest thus far received on interim fee awards computed at the 1-year Treasury bill rate and the prime rate.

R.1107 [JA1209]. The stipulation then recites that the parties have "reached agreement concerning these issues" and that defendants will pay plaintiffs $9,033,600. *Id.* This was a lump sum settlement under which plaintiffs and defendants agreed only on the amount to be paid. Contrary to plaintiffs' assertion, Brief of Appellants at 16, there was no stipulated allocation between additional lodestar fees and additional compensation for delay. Furthermore, again contrary to plaintiffs' assertions, *id.* at 15, 17, 31, 33, the parties did not stipulate to use the hourly rates in the LSI matrix or any particular hourly rates at all.

---

the hourly rates in that matrix accurately measured class counsel's true market value through June 1998, but thereafter were below the prevailing market rates for complex civil litigation in Washington, D.C. *See* 2020 Mem. Op. at *11-14 [JA1170-77].

Similarly, the March 16, 2022 joint stipulation that established the $19 million base lodestar (i.e., the portion of the total lodestar that is eligible for potential enhancement) reflects only the parties' agreement to the amount of the base lodestar. It does not include any agreement about how the base lodestar was calculated or the hourly rates used for that calculation. *See* R.1112 [JA1213].

Both the September 30, 2021 stipulation and the March 16, 2022 stipulation were negotiated resolutions. Class counsel's total lodestar fee and the base lodestar were determined by a stipulated agreement of the parties, not by mechanical application of the LSI matrix or any other hourly rate formula. Plaintiffs may have used the LSI matrix for their internal deliberations when negotiating, but defendants never accepted the LSI matrix's hourly rates to calculate either the total lodestar or the base lodestar. *See* Brief of Appellants at 33 ("The government adamantly opposed even the use of LSI rates."). Nor were the LSI matrix rates ever formally adopted by the District Court for use in this case.

In a separate March 16, 2022 joint stipulation, the parties stipulated to a settlement of certain fee claims and also

> further stipulate[d] that through this stipulation and the [September 30, 2021] stipulation entered by the [District]

Court on October 1, 2021, they have *completely and finally resolved* any claim for fees or costs based on a contention (1) that Plaintiffs' receipt of fees was unreasonably delayed, (2) that the lodestar fees Plaintiffs have been paid did not reflect counsel's true market value, and (3) that the interest paid on interim fee awards in this litigation was insufficient.

R.1113 (emphases added) [JA1215]. "Completely," "finally," and "resolved" are absolute, unequivocal, unambiguous words. Thus, as the District Court found, the stipulations "plainly foreclosed" plaintiffs' ability to seek a lodestar enhancement pursuant to *Perdue*'s exemplars for "true market value" and "exceptional delay." *See* 2023 Mem. Op. at *4 [JA1592]. Thus, plaintiffs waived any argument grounded on those *Perdue* exemplars.[4] *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1039 (D.C. Cir. 2003) (where party "disavowed" issue below, issue was "expressly waived and cannot be resurrected on appeal").

Plaintiffs' argument about the shortcomings of the LSI matrix rates is also foreclosed because plaintiffs never raised that argument in District Court. In the 2020 decision, the District Court indicated that the

---

[4] *Perdue* also noted that, if "the attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted," then an enhancement may be appropriate. *Perdue*, 559 U.S. at 555. Plaintiffs made no claim for an enhancement based on this exemplar, so it is not pertinent here.

LSI matrix "or something similar" could be used to compute a lodestar fee linked to prevailing market rates, as contemplated by *Perdue*. *See* 2020 Mem. Op. at *19 [JA1187]. Plaintiffs thereafter presented their proposed calculation of the lodestar using LSI matrix rates. *See* R.1099 [Pl. Supp. Mem. re Final Fee Determination] [JA1190]. In that memorandum plaintiffs expressed no disagreement with the hourly rates in the LSI matrix. To the contrary, they expressed unqualified, full-throated support for using the LSI matrix's seniority-based single-factor rates to compute the lodestar. Plaintiffs pointed out that "this Circuit has found that a lodestar for complex federal litigation based on rates in the LSI matrix is reasonable," and asserted that class counsel's "extraordinary lawyering . . . warrants application of the LSI *Laffey* Matrix rates." *Id.* at 3-4 (citing *DL v. District of Columbia*, 924 F.3d 585 (D.C. Cir. 2019), and other cases) [JA1192-93]. In addition, plaintiffs explicitly told the District Court that "[u]se of LSI rates is consistent with the mandate of *Perdue v. Kenny A.,* 559 U.S. 542, 555 (2010), that a lodestar that does not reflect the true market value of plaintiff's counsel's efforts be adjusted 'in accordance with specific proof linking the attorney's ability to a prevailing market rate.'" *Id.* at 4-5 [JA1193-94].

Plaintiffs' proposed recalculation of the lodestar with LSI matrix rates and their companion proposal for interest to compensate for the delayed receipt of lodestar fees, *see id.* at 6-10 [JA1195-99], were both rendered moot by the parties' joint stipulations described above.[5] Indeed, the March 16, 2022 stipulation that set the base lodestar at $19 million was expressly "intended to enable the parties and the [District] Court to avoid the need to contest or adjudicate specific hours or *hourly rates.*" R.1112 (emphasis added) [JA1213].

In the ensuing briefing on plaintiffs' lodestar enhancement motion, plaintiffs never mentioned the LSI matrix. They sought neither an enhancement based on the alleged "single-factor rates exception" nor any additional compensation for delay. *See generally* R.1119-1 [Pl. Mem. re Lodestar Enhancement] [JA1299]; R.1121 [Pl. Reply re Lodestar Enhancement] [JA1435]. Therefore, plaintiffs did not preserve for appeal

---

[5] Plaintiffs' insistence that "[t]he eighteen-year delay before the first interim payment . . . falls within *Perdue*'s third exemplar," Brief of Appellants at 38 n.24, overlooks that this delay was "largely attributable to choices made by Plaintiffs, not impropriety or foot-dragging by the defense." 2020 Mem. Op. at *16 [JA1182]; *see* R.1083-16 (January 25, 1995 District Court Order admonishing plaintiffs "for having waited all these years to file an interim application for attorneys' fees and costs after being encouraged to do so in open Court on several occasions") [JA957].

any issue based on those factors. *See Air Florida,* 750 F.2d at 1084-85; *Kassman*, 546 F.2d at 1032; *United States v. Trudeau*, 812 F.3d 578, 589 (7th Cir. 2016) (to avoid forfeiture, a party must properly preserve argument for appeal even when district court is bound to reject it).

In short, all issues involving single-factor rates and compensation for delay have been resolved, waived, and forfeited. No issues about those matters remain in the case.

## III. The District Court Did Not Interpret The Parties' Stipulations To Prevent Plaintiffs From Seeking A Lodestar Enhancement.

Plaintiffs insist that the District Court misread the parties' stipulations to foreclose any possibility for a fee enhancement. Brief of Appellants at 4-5. According to plaintiffs, the District Court nullified the reservation of their right to seek a lodestar enhancement, found that they had abandoned their enhancement claim, and refused to review their evidence because the court improperly interpreted the phrase "true market value" in the March 16, 2022 joint stipulation (R.1113 [JA1215]) as dispositive of the enhancement issue. *See id.* at 18-19, 21, 43-47. This is a straw man argument that distorts the District Court's decision.

If the District Court held the view that plaintiffs ascribe to it, it would have rejected plaintiffs' motion for a lodestar enhancement out of hand. Instead it resolved their motion on the merits. In this connection, the District Court pointed out that the parties' stipulations left as "the only remaining issue in dispute a potential 'enhancement of the lodestar for superior attorney performance and exceptional results.'" 2023 Mem. Op. at *2 [JA1589]. The District Court thereby recognized that the enhancement issue was left unresolved by the parties' stipulations, and that plaintiffs had reserved their right to seek an enhancement.

Contrary to plaintiffs' claim, Brief for Appellants at 4-5, 43-47, the District Court did not interpret the phrase "true market value" as resolving the enhancement issue. Rather, the District Court found that the parties' stipulations resolved only potential claims for enhancement under two specific exemplars set forth in *Perdue* of "circumstances in which the 'strong presumption' of reasonableness of a lodestar fee could be overcome." 2023 Mem. Op. at *4 [JA1592]. The District Court did not hold that the *Perdue* exemplars are exclusive, so plaintiffs could still qualify for an enhancement if they satisfied their burden to demonstrate with "specific evidence" some other relevant factor, not already covered

by the lodestar, and a method to calculate an enhancement based on that factor that is "reasonable, objective, and capable of being reviewed on appeal." *See id.* at *3 (quoting *Perdue*, 559 U.S. at 553, 555; internal quotation marks omitted) [JA1590-91].

Thus, the District Court did not "nullify" plaintiffs' reservation of their right to seek a lodestar enhancement. Under the District Court's interpretation of the stipulations, plaintiffs' reservation was preserved in all but the two respects covered by the parties' stipulated settlement. Plaintiffs were free to request an enhancement, but were foreclosed from basing their request on (1) a contention that class counsel's lodestar fee fell short of counsel's true market value, or (2) a contention that class counsel should receive additional compensation for delay in receipt of the lodestar fee. *See id.* at *4 [JA1592-93]. This is precisely how any reasonable person would interpret those stipulations. *Cf. Keepseagle v. Perdue*, 856 F.3d 1039, 1047 (D.C. Cir. 2017) (interpretation of settlement agreement guided by "what a reasonable person in the position of the parties would have thought the disputed language meant"). In fact, this is how plaintiffs themselves apparently interpreted the stipulations because their motion for a lodestar enhancement did not "seriously

contend" that class counsel should receive an enhancement under either the *Perdue* exemplar for "true market value" or the *Perdue* exemplar for "exceptional delay," but instead "identified various other reasons to justify an enhancement of the lodestar." 2023 Mem. Op. at *4 [JA159293].

## IV. Plaintiffs Failed To Carry Their Burden Of Proof To Justify A Lodestar Enhancement.

### A. Plaintiffs Failed To Present Specific Evidence Of A Factor Not Subsumed By The Lodestar That Provides An Objective And Reviewable Basis For An Enhancement.

The reasons plaintiffs advanced to justify a lodestar enhancement included "the significant hardships that their counsel faced during the litigation, certain key strategic decisions their counsel made, and various policy reasons." 2023 Mem. Op. at *4 [JA1593]. After reviewing plaintiffs' voluminous submissions, the District Court concluded that plaintiffs' proposed enhancement factors are all unavailing because they either are subsumed by the lodestar calculation or do not provide an objective and reviewable basis for a lodestar enhancement. Accordingly, the District Court concluded that no enhancement is warranted.

Plaintiffs argue that class counsel's high degree of success "is an objective and reviewable basis for enhancement." Brief of Appellants at

25. *Perdue*, however, confirmed that "the quality of an attorney's performance" and the "results obtained" should be treated "as one"; the Court explained that "superior results are relevant only to the extent that they are the result of superior attorney performance," and so a court need only consider whether a fee enhancement is justified due to superior performance. *Perdue*, 559 U.S. at 554; *accord* 2023 Mem. Op. at *4 [JA1592]. This approach accords with this Court's precedent whereby "results obtained" is considered "only under the rubric of 'quality of representation,'" not as an independent enhancement factor. *Thompson v. Kennickell*, 836 F.2d 616, 622-23 & n.5 (D.C. Cir. 1988) (quoting *Copeland v. Marshall*, 641 F.2d 880, 894 (D.C. Cir. 1980) (en banc); some internal quotation marks omitted).

Thus, while an exceptional result is a necessary condition for a lodestar enhancement, the result alone is not sufficient. *See Save Our Cumberland Mountains*, 826 F.2d at 52 ("the Supreme Court requires more than a finding that counsel attained an 'exceptional' result"). Indeed, plaintiffs acknowledged below that "exceptional success" is a "threshold requirement." R.1119-1 [Pl. Mem. re Lodestar Enhancement] at 12 [JA1317]. To justify an enhancement, the fee applicant must

identify some additional relevant factor that is not subsumed by the lodestar and that provides an objective, reviewable basis for the requested enhancement. Importantly, subjective and impressionistic factors do not qualify because they are "essentially arbitrary." *See Purdue*, 559 U.S. at 557-58.

*Perdue*'s rejection of subjective and impressionistic factors notwithstanding, plaintiffs rely heavily on laudatory statements about class counsel by the District Court and the Special Master. Similar, if not even more laudatory statements by the trial court in *Perdue*, however, were disregarded because a reviewing court cannot assess the accuracy of such statements. *Compare* Brief of Appellants at 3, 11 (comments by Judge Robertson at fairness hearing) *with Purdue*, 559 U.S. at 569 (Breyer, J., dissenting). Notably, the Supreme Court in *Perdue* "[did] not question the sincerity of the District Court's observations." *Perdue*, 559 U.S. at 558. The Supreme Court rejected those observations not because they were deemed suspect, but because awarding an enhancement on an impressionistic basis undermines "a major purpose of the lodestar method—providing an objective and reviewable basis for fees." *Id*. Subjective and impressionistic opinions may not be considered in

determining a reasonable fee because relying on such opinions is not "a methodology that permit[s] meaningful appellate review." *Id.*; *accord* 2023 Mem. Op. at *5 [JA1594].

The statements by the Special Master on which plaintiffs rely do not support an enhancement for an additional reason: those statements describe factors used to determine the "reasonable hours" component of the lodestar calculation. *See Dague*, 505 U.S. at 559 (the lodestar is "the product of reasonable hours times a reasonable rate"; quoting *Delaware Valley I*, 478 U.S. at 565). In particular, the factors identified by the Special Master were explicitly taken into account in determining the number of hours that class counsel reasonably expended on the litigation, and so are already accounted for in the lodestar calculation. 2023 Mem. Op. at *5 [JA1594] ("the complexity and voluminous nature of the record materials will be reflected in the overall number of hours billed").

For example, in plaintiffs' third and fourth interim fee petitions, plaintiffs sought compensation for thousands of hours that class counsel devoted to document review in connection with plaintiffs' so-called "Defense Buster" project. Defendants objected to the fee request, arguing that much of the time expended by class counsel for document review was

duplicative and excessive. Most of the statements on which plaintiffs rely are taken from the Special Master's explanation for his recommendation to reject defendants' argument and compensate class counsel for virtually all the hours they billed. *See* R.1121-1 [Special Master's Report re 4th Fee Petition] at 27-39, 56 [JA1493-505, 1522]; R.1121-3 [Special Master's Report re 3rd Fee Petition] at 26-27, 30-31 [JA1569-70, 1573-74]. Relying on those factors again to support a lodestar enhancement is double counting in violation of *Perdue* rule four. *See Perdue* 559 U.S. at 543 ("an enhancement may not be based on a factor that is subsumed in the lodestar calculation").

Some of the enhancement factors plaintiffs propose are included among the so-called *Johnson* factors. *See* Brief of Appellants at 26-27 & n.18. This Court, however, has indicated that the *Johnson* factors are not appropriately used to enhance the lodestar. *King v. Palmer*, 950 F.2d 771, 784 n.8 (D.C. Cir. 1991) (en banc). Furthermore, the Supreme Court has observed that the *Johnson* factors "gave very little actual guidance to district courts. Setting attorney's fees by reference to a series of sometimes subjective factors placed unlimited discretion in trial judges and produced disparate results." *Perdue*, 559 U.S. at 551; *accord*

*Copeland*, 641 F.2d at 890 (*Johnson* factors "overlap considerably," are "conflicting and at least partially redundant," and, "without more, cannot guarantee a rational setting of fees" because *Johnson* "offers no guidance on the relative importance of each factor, whether they are to be applied differently in different contexts or, indeed, how they are to be applied at all."); *see also Pilgrim's Pride*, 690 F.3d at 663 ("the *Johnson* factors are *personae non gratae* in *Perdue*'s eyes").

Plaintiffs' invocation of the *Johnson* factors, therefore, does nothing to help satisfy plaintiffs' burden to produce "specific evidence" to support a fee enhancement that is "objective and capable of being reviewed on appeal." *Perdue*, 559 U.S. at 553; *see Copeland*, 641 F.2d at 890 ("Simply to articulate those twelve [*Johnson*] factors, however, does not itself conjure up a reasonable dollar figure in the mind of a district court judge. A formula is necessary to translate the relevant factors into terms of dollars and cents."); *see also Perdue*, 559 U.S. at 552 ("unlike the *Johnson* approach, the lodestar calculation is 'objective,' and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results"; internal citation omitted).

The litigation activities plaintiffs point to as evidence of superior attorney performance, to the extent relevant here, involve the same kind of work (e.g., reviewing documents, plotting strategy, writing briefs, questioning witnesses, managing deadlines amid competing priorities) that lawyers typically do in complex civil litigation, which is notoriously contentious, demanding, and intense.[6] *See* R.1121-1 [Special Master's Report re 4th Fee Petition] at 12 n.5 [JA1478] (noting that "[d]efendant's counsel have borne similar burdens"); *see also Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 969 (D.C. Cir. 2004) (producing high-quality legal papers in a relatively short period of time or on a short deadline is something that lawyers do on a regular basis). Such work is subsumed

---

[6] Some of the work referenced on page 9 in the Brief of Appellants took place during the 1980-1990 time period for which lodestar fee enhancements were previously awarded. *See also* Brief of Appellants at 24, 31-32, 47 n.26, 49 (referencing work by Mr. Fredrickson during 1980-1990 time period). This work is excluded from the $19 million base lodestar and so is irrelevant to plaintiffs' instant enhancement request. *See* R.1120 [Def. Opp. re Lodestar Enhancement] at 25-28 [JA1414-17]. With respect to the referenced work that is included in the base lodestar, as the District Court found, "none of the case features identified by Plaintiffs is a factor not already subsumed within the lodestar that could support an objectively based enhancement of it." 2023 Mem. Op. at *4 [JA1592]. Thus, although defendants contest plaintiffs' characterizations of those case features and their import, it was not necessary for the District Court, and is not necessary for this Court, to reach those issues. *See* R.1120 [Def. Opp. re Lodestar Enhancement] at 28-45 [JA1417-34].

by the lodestar, through either additional hours expended on the litigation or the lawyers' hourly rates. *See* 2023 Mem. Op. at *5 [JA____].

For example, the "novelty and complexity" of a case and "brilliant insights and critical maneuvers" by senior attorneys are not valid enhancement factors because the former is reflected in the number of hours billed and the latter is accounted for by the attorneys' billing rates. *See Perdue*, 559 U.S. at 553 & 555 n.5. Work that is "difficult, wearing, and time consuming" is similarly accounted for by the lodestar fee. *Delaware Valley II*, 483 U.S. at 730 (plurality op.). Relying on such factors to award an enhancement therefore would violate *Perdue*'s "no double counting" rule. As the District Court recognized, "[t]he Supreme Court has made clear . . . that hard work and superior or creative lawyering is not a basis for enhancement." 2023 Mem. Op. at *5 [JA1594]. Further, characterizing such factors as somehow "rare and exceptional" is inherently a subjective and impressionistic assessment, so such characterizations cannot provide an "objective and reviewable" basis for an enhancement. *See* 2023 Mem. Op. at *5 [JA1594-95] ("monumental resistance" and "severe time limitations" are not valid enhancement factors).

*Perdue* rule 3 permits an enhancement to be awarded only in "rare and exceptional circumstances." *Perdue*, 559 U.S. at 552 (internal quotation marks omitted). Thus, the District Court's characterization of this case as "in all respects extraordinary," 2020 Mem. Op. at *1 [JA1147], does not mean that class counsel are *ipso facto* entitled to receive an enhanced fee award for the work at issue here. Even extraordinary *cases* will not necessarily present the rare and exceptional *circumstances* contemplated by *Perdue* for lodestar enhancements. And class counsel already have received enhanced fees for the period during which such circumstances were found to exist in this case. *See* 2023 Mem. Op. at *6 [JA1596] ("a quality enhancement *was* previously awarded in this case for the very period when the case faced this setback"; emphasis in original).

Similarly, the District Court's conclusion that class counsel's "lawyering and the result were 'exceptional' by any metric," 2023 Mem. Op. at *7 [JA1599], does not constitute a "rare and exceptional circumstance" under *Perdue*. As the Supreme Court has explained:

> [W]hen an attorney first accepts a case and agrees to represent the client, he obligates himself to perform to the best of his ability and to produce the best possible results commensurate with his skill and his client's interests.

> Calculating the fee award in a manner that accounts for these factors, either in determining the reasonable number of hours expended on the litigation or in setting the reasonable hourly rate, thus adequately compensates the attorney, and leaves very little room for enhancing the award based on his post-engagement performance.

*Delaware Valley I*, 478 U.S. at 565-66.

The stipulated base lodestar plaintiffs seek to enhance consists of fees incurred by class counsel during the post-1990 litigation, after plaintiffs had assembled a large and formidable litigation team. By that time plaintiffs' legal team matched or exceeded the government's legal team, and thereafter plaintiffs had no apparent difficulty matching or exceeding the government personnel and resources devoted to the case.[7] *See* R.1083-8 [Van Horn Decl.] at 1-4, ¶¶ 2-6 [JA777-80]. During this phase of the case, plaintiffs' legal team included more than "120 individuals in seven firms." R.1081 [Pl. Mem. re Final Fee

---

[7] Plaintiffs' fee counsel reported that plaintiffs' counsel devoted over 116,000 hours to this case from its inception: over 45,000 hours for partners, over 51,000 hours for associates, and nearly 20,000 hours for paraprofessionals. 2020 Mem. Op. at *17 (citing fee counsel's declaration) [JA1184]. Most of this time was expended during the post-1990 litigation that is the subject of plaintiffs' instant lodestar enhancement request. *See* R.1082-2 [Lang Decl.], Ex. C (Am.) at PDF pp. 37-52 [JA616-31]. Plaintiffs' counsel have been paid the market value of their work, plus interest to compensate for delay, plus the fee enhancements awarded with respect to work performed during the 1980-1990 time period.

Determination] at 6 [JA482]. Significantly, as the District Court pointed out, plaintiffs were able to engage those firms "without promise that they would receive an enhancement." 2023 Mem. Op. at *7 [JA1598]; *see Perdue*, 559 U.S. at 554 (enhancements should not be awarded in the absence of "specific evidence that the lodestar fee would not have been adequate to attract competent counsel"; internal quotation marks omitted).[8]

Plaintiffs' legal team included specialist litigators, senior attorneys experienced in managing complex civil cases, and a host of junior attorneys to handle claims analysis, document review and coding, as well as hearing preparation. Plaintiffs' counsel could therefore divide responsibility for the litigation and assign work to personnel with the knowledge, skill, and ability needed for each task. *See* R.1121-1 [Special Master's Report re 4th Fee Petition] at 10, 12-13 [JA1476-79]; R.1121-3 [Special Master's Report re 3rd Fee Petition] at 9-11 [JA1552-54]; *see also* R.1119-3 [Chertkof Decl.] at 2, ¶ 2 ("This division of labor was important as both projects were extremely complicated and time-consuming. By

---

[8] Plaintiffs expressly waived any claim to a "contingency" enhancement based on the risk of not prevailing in this case. *See* R.1121 [Pl. Reply re Lodestar Enhancement] at 22 [JA____].

separating the two, each part of the *Hartman* team was able to confidently concentrate on their issue, knowing the other issue was in capable hands.") [JA1373].

The litigation activities that class counsel undertook during the post-1990 phase of this case are entirely typical of litigation activities in complex federal civil cases. The District Court properly concluded that none of this work involved "rare and exceptional circumstances" as that terminology is used in *Perdue*.

In their memorandum in support of a lodestar enhancement, plaintiffs told the District Court:

> In a sense, this Court is Justice Kennedy's "detached observer," removed in time by two decades from the superior lawyering that is the subject of this motion, and able to see the specific evidence in the record objectively. The Court is in a perfect position to decide the enhancement question before it.

R.1119-1 [Pl. Mem. re Lodestar Enhancement] at 43 [JA1348]; *see Perdue*, 559 U.S. at 560 (Kennedy, J., concurring) ("When immersed in a case, lawyers and judges find within it a fascination, an intricacy, an importance that transcends what the detached observer sees.").

The District Court here did exactly what plaintiffs asked it to do. After objectively reviewing the voluminous record, it determined that

class counsel had received reasonable attorneys' fees and no additional enhancement was merited. That decision fully accords with the rigorous, demanding standard that traditionally applies to quality-based lodestar enhancement requests. *See Donnell v. United States*, 682 F.2d 240, 254 (D.C. Cir. 1982) ("We have found it all too common for the district courts to adjust the lodestar upward to reflect what the courts view as a high level of quality of representation. This trend should stop."). The decision is also in harmony with *Perdue*, firmly grounded in fact and law, and, as an exercise of the District Court's broad discretion to determine "reasonable" attorneys' fees, warrants deference from this Court. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997) ("deference . . . is the hallmark of abuse-of-discretion review"); *see also* R.1087 [Pl. Reply re Final Fee Determination] at 22 [JA1964] ("[t]he District Court has broad discretion to decide reasonable attorneys' fees," and "[d]istrict court judges 'are accustomed to making reasonableness determinations in a wide variety of contexts, and their assessments in such matters, in the event of appeal, ordinarily qualify [for] highly respectful review'" (quoting *Gisbrecht*, 535 U.S. at 808)).

## B. Plaintiffs Failed To Proffer A Reasonable, Objective, And Reviewable Methodology To Compute A Lodestar Enhancement.

Plaintiffs encouraged the District Court to adopt a subjective and impressionistic "I-know-it-when-I-see-it" approach to lodestar enhancement. *See* R.1121 [Pl. Reply re Lodestar Enhancement] at 24 (quoting *Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964)) [JA1464]. Such an approach is clearly at odds with *Perdue*, and its adoption by the District Court would have been error. Plaintiffs, therefore, cannot satisfy their "heavy burden" to show that the District Court abused its discretion by rejecting their unsound approach and denying a lodestar enhancement. *See Mt. Solutions, Ltd. v. FCC*, 197 F.3d 512, 522 (D.C. Cir. 1999).

Plaintiffs asked the District Court to "award additional fees in a range from 1.0 to 4.5 times the stipulated $19 million lodestar." R.1119-1 [Pl. Mem. re Lodestar Enhancement] at 44 [JA1349].[9] This request

---

[9] Defendants previously noted that plaintiffs may have intended to request a multiplier in the range from <u>2.0</u> to 4.5. *See* R.1120 [Def. Opp. re Lodestar Enhancement] at 9 n.5 [JA1398]; *see also* 2023 Mem. Op. at *6 (plaintiffs seek multiplier "in the range from [2.0] to 4.5"; emendation by District Court) [JA1597]. Plaintiffs did not clarify their request in their reply. As most cases plaintiffs cited as exemplars awarded multipliers below 2.0, *see* R.1121-5 [Pl. Case Chart] [JA1585], we now presume that plaintiffs' requested range is accurately stated in their memorandum in support of a lodestar enhancement (i.e., from 1.0 to 4.5).

equates to an additional fee award somewhere between $0 and $66.5 million. *See id.* at 8 n.14 [JA1313] ("a multiplier of 1.5 when applied to the stipulated lodestar of $19 million would mean additional fees of $9.5 million and a multiplier of 2 would yield an additional $19 million"). Plaintiffs left the choice of the multiplier, and the justification for that choice, to the District Court. *See* R.1121 [Pl. Reply re Lodestar Enhancement] at 24 [JA1464] ("the Court must select [a multiplier] that is 'objective and reviewable'"). "To assist the Court in assigning a multiplier," plaintiffs prepared a chart "noting relevant factors pertinent to each of the cases where an enhancement has been awarded." *Id.* Plaintiffs' chart lists 13 primarily out-of-Circuit, pre-*Perdue* cases in which multipliers ranging from 1.12 to 4.45 were used to enhance the lodestar fee. *See* R.1121-5 [Pl. Case Chart] [JA1585].

The District Court expressed skepticism that plaintiffs' proposed case-comparison approach is compatible with *Perdue*, explaining that selecting a multiplier in the range plaintiffs proposed "would be a largely subjective exercise" that would "produce the kind of 'essentially arbitrary' results that the [Supreme] Court said must be abandoned in favor of 'an objective and reviewable' basis to justify a lodestar enhancement." 2023

Mem. Op. at *6 [JA1597]. The District Court's skepticism is well-founded. *See Perdue*, 559 U.S. at 557 ("Why, for example, did the [district] court grant a 75% enhancement instead of the 100% increase that respondents sought? And why 75% rather than 50% or 25% or 10%?").

The District Court acted well within its discretion in rejecting plaintiffs' proposed case-comparison methodology. Indeed, it would have been an abuse of discretion for the District Court to do otherwise. Plaintiffs' proposal is not only inconsistent with *Perdue*, but also amounts to an abdication of plaintiffs' burden of proof.

The fifth and sixth *Perdue* rules provide that (5) "the burden of proving that an enhancement is necessary must be borne by the fee applicant" and that (6) "a fee applicant seeking an enhancement must produce specific evidence that supports the award" so that the enhancement's calculation is "objective and capable of being reviewed on appeal." *Perdue*, 559 U.S. at 553; *accord Murray v. Weinberger*, 741 F.2d 1423, 1428 (D.C. Cir. 1984) (a fee applicant bears a "heavy burden . . . to justify any increase in the lodestar figure," and "this burden is satisfied *only* if the applicant makes a *specific claim* for an upward adjustment

based on a particular factor" and provides "specific support for any premium which the applicant requests"; emphases in original).

Although the District Court has the ultimate responsibility for a fee award, as a predicate to any enhancement of the lodestar plaintiffs were obliged to present a specific proposal that was objective and capable of being reviewed on appeal. *See Purdue*, 559 U.S. at 553. Instead of making a specific claim for an upward adjustment, however, plaintiffs made a very unspecific request and then sought to pass their burden of proof to the District Court. Plaintiffs may not dodge their burden so easily. *See Murray*, 741 F.2d at 1429 ("[i]f these strict requirements are satisfied by *both* the fee applicant and the district court, an upward adjustment of the lodestar figure may be proper"; emphasis added).

Even assuming that the putative enhancement factors on which plaintiffs rely are not subsumed by the lodestar, plaintiffs' enhancement request would still be deficient because plaintiffs failed to proffer a reasonable, objective, and reviewable methodology for assigning a dollar value to those factors. *See Perdue*, 559 U.S. at 555 ("the amount of the enhancement must be calculated using a method that is reasonable, objective, and capable of being reviewed on appeal"). If no such

methodology is identified, then the putative enhancement factor cannot properly be considered in determining a reasonable fee. *See id.* at 553-54 (the "'strong presumption' that the lodestar figure is reasonable" may be overcome only where a factor not subsumed by the lodestar "may properly be considered in determining a reasonable fee"); *accord* 2023 Mem. Op. at *6 [JA1596] ("[t]he positive societal impact of Plaintiffs' victory cannot be measured objectively to warrant an enhancement").

It is plaintiffs' burden to put forward a reasonable, objective, and reviewable methodology for a lodestar enhancement. *Perdue*, 559 U.S. at 553 ("the burden of proving that an enhancement is necessary must be borne by the fee applicant"; "a fee applicant seeking an enhancement must produce specific evidence that supports the award" so that the enhancement's calculation "is objective and capable of being reviewed on appeal"). Plaintiffs made no attempt to satisfy this methodological aspect of their burden of proof. They neither revealed the specific enhancement they sought nor proffered a reasonable, objective, and reviewable method for calculating the enhancement. This was a fatal omission. The District Court's decision properly may be affirmed for this reason alone.

## CONCLUSION

The Court should affirm the District Court's denial of plaintiffs' motion for a lodestar enhancement.

Dated:  April 13, 2024        Respectfully submitted,
        Washington, D.C.

                              MATTHEW M. GRAVES
                              United States Attorney

                              JANE M. LYONS
                              Assistant United States Attorney

                              By:  /s/ Peter C. Pfaffenroth
                              PETER C. PFAFFENROTH
                              Assistant United States Attorney
                              601 D Street NW
                              Washington, D.C. 20530
                              (202) 252-2513
                              peter.pfaffenroth@usdoj.gov

                              *Counsel for the Appellees*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 11,846 words, excluding the parts of the brief exempted by Rule 32(f) and Circuit Rule 32(e). This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it has been prepared in 14-point Century Schoolbook font, a proportionally-spaced typeface.

  /s/ Peter C. Pfaffenroth
PETER C. PFAFFENROTH
Assistant United States Attorney

## CERTIFICATE OF SERVICE

On April 13, 2024, I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system, which will effectuate service upon all registered CM/ECF users.

  /s/ Peter C. Pfaffenroth
PETER C. PFAFFENROTH
Assistant United States Attorney